James I. VAN FOSSEN and Jane M. Van Fossen, Individually and as natural parents of Jen A. Van Fossen, Deceased, and on behalf of John F. Van Fossen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C–76–1483–CBR.

United States District Court, N. D. California.

April 4, 1977.

As Amended June 8, 1977.

---

John F. Sullivan, Sullivan, Johnson & Graham, San Francisco, Cal., George E. Farrell, Healey & Farrell, Washington, D. C., for plaintiffs.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Mark A. Dombroff, Trial

Atty., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This suit is an action for wrongful death brought under the Federal Tort Claims Act ("Tort Claims Act").[1] It is alleged by plaintiffs that decedent, their daughter Jen A. Van Fossen, was a cabin attendant aboard Trans World Airlines Flight 514 which crashed in the vicinity of Berryville, Virginia, on December 1, 1974. It is further alleged that the crash was caused by the negligence of employees of the Federal Aviation Administration ("FAA"), who were acting within the scope of their employment for defendant United States. Damages in the sum of $500,000 were sought. Plaintiffs, James I. Van Fossen and Jane M. Van Fossen, as parents of the deceased, initiate this action for themselves individually and on behalf of John F. Van Fossen, brother of the deceased, subsequent to FAA's denial of their administrative claim on June 8, 1976. *See* Plaintiff's Exhibit B.

■ Since the 1966 amendment to 28 U.S.C. § 2675(a)[2] of the Tort Claims Act, any person having a damage claim against the United States must first present that claim to the appropriate Federal agency and await a final denial before instituting a court proceeding. The administrative claim must be presented within two years "after such claim accrues", and the court proceeding must be commenced within six months after a notice of final denial or be forever barred by the statute of limitations contained in 28 U.S.C. § 2401(b).[3] Proper presentation of the claim to the appropriate agency is a mandatory prerequisite to any later court action under the Tort Claims Act. Numerous courts have held that compliance with § 2675(a) is a jurisdictional requirement which may not be waived. *E. g., Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508, 515 (6 Cir. 1974); *Bialowas v. United States,* 443 F.2d 1047, 1049 (3 Cir. 1971). Without a claim having been properly filed under § 2675, a court must refuse to entertain the action. *Caton v. United States,* 495 F.2d 635, 638 (9 Cir. 1974).

Plaintiffs have filed a motion for declaratory judgment on the ground that they have presented a valid administrative claim thereby satisfying § 2675(a) and creating jurisdiction in the federal courts. Defendant has filed a counter motion to dismiss on the ground that plaintiffs are not proper parties plaintiff in this action.

The Attorney General has issued regulations which define the exact procedure to be followed in filing administrative claims under the Tort Claims Act.[4] It is disputed here whether plaintiffs have complied with Regulation 14.3(c) which states:

> shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim."

1. 28 U.S.C. §§ 1346, 1402, 2671 *et seq.*

2. 28 U.S.C. § 2675(a) (1966), amending 28 U.S.C. § 2675(a) (1949) provides:
 "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection

3. 28 U.S.C. § 2401(b) provides:
 "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

4. The regulations promulgated by the Attorney General under the authority granted in 28 U.S.C. § 2672 are found in 28 C.F.R. § 14.1 *et seq.*

"A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law."

■ The government concluded that the plaintiffs were not "legally entitled to assert" a wrongful death claim in the courts of Virginia and had therefore not presented a valid administrative claim. This conclusion was based on two assumptions. First, the law of Virginia was applicable in this case since liability under the Tort Claims Act is determined pursuant to the law of the state where the tortious conduct occurred. Second, because, under the law of Virginia, plaintiffs were not entitled to bring a court action for wrongful death without the appointment of a Virginia personal representative, they also were not entitled to present an administrative claim without that same representative. These views are stated succinctly in the FAA's letter of June 8, 1976, denying plaintiffs' claim:

"Since the alleged acts or omissions committed by government employees which you allege caused the accident in question occurred in the State of Virginia, the law of that state applies. Pursuant to Code of Virginia, 1950, Section 8–633 et seq., an action for wrongful death may only be brought by and in the name of a *personal representative* of the deceased. Therefore, since document submitted purports to be a claim on behalf of James Van Fossen as an *individual,* there can be no liability on the part of the United States." (Emphasis added.)

There can be no question that the government was correct in its first assumption. The whole law of Virginia, including its choice of law rules, controlled this action since Virginia was undisputedly the place where the tortious act or omission occurred. *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Under Virginia choice of law rules, the law of the place of the accident governs the action, *Betts v. Southern Ry.,* 71 F.2d 787, 789 (4

Cir. 1934); *State of Maryland v. Coard,* 175 Va. 571, 9 S.E.2d 454, 455–456 (1940), thus, we must look to the Virginia Death by Wrongful Act Statute and the other laws of that state for guidance.

■ In making its second assumption, the government pointed first to § 8–634 of the Virginia statute which states, in part:

"Every such action shall be brought by and in the name of the personal representative of such deceased person and within two years after his or her death, but if any such action is brought within such period of two years after such person's death, and for any cause abates or is dismissed without determining the merits of such action, the time such action is pending shall not be counted as any part of such period of two years, and another suit may be brought within the remaining period of such two years as if such former suit had not been instituted." Code of Virginia, § 8–634.

This provision must, in turn, be read with § 26–59 of the Code of Virginia, 1950, which explicitly restricts the appointment of personal representatives:

"No natural person not a resident of this State

" * * * shall be appointed or allowed to qualify or act as personal representative * * * of any decedent." Code of Virginia, § 26–59.

The courts of Virginia have staunchly upheld this statute as the expressed public policy of the state, *McDaniel v. North Carolina Pulp Co.,* 198 Va. 612, 95 S.E.2d 201, 203–204 (1956), and it has been held to be binding in the federal courts. *Grady v. Irvine,* 254 F.2d 224, 228 (4 Cir. 1958); *Holt v. Middlebrook,* 214 F.2d 187 (4 Cir. 1954).

To this point in its argument, the government correctly outlined the substantive nature and applicability of the Virginia statutes. But its conclusion, that merely because plaintiffs are not entitled to *bring* the action they thereby are not entitled to *assert* a claim for wrongful death, is entirely unfounded. The government has confused the concept of a right to bring an action with that of a right to assert a claim for

recovery. The conclusion misinterprets the law of Virginia, and the dismissal of the action would frustrate the administrative claims procedure in a manner not intended by Congress.

 Simply put, by its argument, the government has suggested that the words "bring an action" be used interchangeably with the words "assert a claim" in Regulation 14.3(c). Yet, it offered no authority in support of this construction, nor did it put forth any rationale for why this Court should adopt that view. A claimant who lacks the capacity to bring a wrongful death action in a state court may, nonetheless, be entitled to assert a claim in those courts for a part of the proceeds recovered. Such is the case in Virginia.

While only a resident personal representative may bring an action for wrongful death, that representative has no individual right to assert the claim:

> "The act requires the suit to be brought by and in the name of the personal representative, but he by no means sues in his general right as a representative. He sues wholly by virtue of the statute, and in respect of a different right. His suit proceeds on different principles. He sues, not for the benefit of the estate, but primarily and substantially as trustee for certain particular kindred of the deceased, who are designated in the statute." *Anderson v. Hygeia Hotel Co.,* 92 Va. 687, 24 S.E. 269, 271 (Va.1896); *see also Wilson v. Whittaker,* 207 Va. 1032, 154 S.E.2d 124, 128 (Va. 1967).

Plaintiffs are among the statutory beneficiaries named in § 8–636.1, which states in relevant part:

> "The jury in any such action may award such damages as to it may seem fair and just, and may direct in what proportion they shall be distributed to the surviving spouse, children, and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased. As to members of the same class, the jury shall have discretion as to who shall receive the

whole or any part of the recovery." Code of Virginia, § 8–636.1.

Once an amount has been recovered in the wrongful death suit, the statutory beneficiaries may sue the personal representative for an accounting of the proceeds. *Patterson v. Anderson,* 194 Va. 557, 74 S.E.2d 195, 203, *cert. denied,* 345 U.S. 965, 73 S.Ct. 952, 97 L.Ed. 1384 (1953); *McDaniel v. North Carolina Pulp Co., supra,* 95 S.E.2d at 206. It is specious to argue that persons who are named as statutory beneficiaries with a right to an accounting from their personal representatives are not legally entitled to assert a claim for wrongful death. The beneficiaries' lack of capacity to institute the action because they are nonresidents of Virginia cannot logically be construed as obliterating their substantive rights. This Court can imagine no better way to be assured of a right to assert a claim than to be included as a statutory beneficiary.

 Accordingly, the Court holds that plaintiffs have complied with Regulation 14.3(c) and, in turn, have satisfied the jurisdictional requirement of § 2675. The proper interpretation of Regulation 14.3(c) is that any person who is intended to be the legal beneficiary of a wrongful death action under the substantive law of the place of the accident, is entitled to file an administrative claim. Whether that claimant eventually may have to rely on an appointed representative to bring the action in the courts of that state is an irrelevant consideration at the administrative stage.

The decision to uphold the validity of plaintiffs' claim, by applying a more liberal reading to Regulation 14.3(c) than the government suggested, is in total harmony with the congressional purpose behind the mandatory administrative claims procedure. As noted in the Senate Report:

> "These four bills have the common purpose of providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government.

> * * * * * *

" * * * The proposals embodied in H.R. 13650 are intended to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. In accomplishing these purposes, the more expeditious procedures provided by this bill will have the effect of reducing the number of pending claims which may become stale and long delayed because of the extended time required for their consideration.

\* \* \* \* \* \*

" * * * This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. That agency would have the best information concerning the activity which gave rise to the claim. Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News, 2515–2517.

Clearly, the intent behind the amendment is to ease court congestion and speed the decisionmaking process through the settlement of *meritorious* claims prior to trial. This "more expeditious procedure"

is meant to benefit claimants and in no way is designed to preclude them from their day in court. The hope is to postpone that court appearance to enhance the likelihood of settlement on the merits. Yet, were the government's interpretation of Regulation 14.3(c) adopted in this case, the administrative process would not serve as a settlement tool but, instead, would act as a procedural roadblock for plaintiffs. This shift would result from the government's attempt to entangle state procedural rules with the federal administrative claims structure. Congress simply did not intend to complicate the claims process with the intricacies of state procedural requirements.[5] It intended to lessen the court caseload through "fair settlement," not procedural default.

The government's allegation that the wrong party has filed the claim here is analogous to the situation in *Executive Jet Aviation, Inc. v. United States, supra,* 507 F.2d 508. In that case, one of plaintiff's aircraft had crashed on takeoff from the Cleveland, Ohio airport. Plaintiff sued the government alleging negligence on the part of the FAA air traffic controllers. Because the action was brought under the Tort Claims Act, plaintiff first filed an administrative claim with the FAA. Prior to filing that claim, however, plaintiff entered into a loan receipt agreement with its insurers obligating itself to repay the loan only out of any net recovery obtained from those

---

**5.** It is also worth noting that Virginia never intended for the personal representative requirement to be used as a bar to a decision on the merits of a plaintiff's wrongful death claim. In *McDaniel v. North Carolina Pulp Co., supra,* 95 S.E.2d 201, the father of the deceased qualified in Nevada as administrator of his son's estate. He then brought a wrongful death action in Virginia where the accident had occurred. The trial court granted defendant's motion for summary judgment on the basis of noncompliance with § 26–59. Plaintiff then obtained the services of a resident personal representative and together they filed a new action. The trial court in the second action was of the opinion that the action was barred by the one-year statute of limitations in §§ 8–633 and 8–634 of the Virginia Death by Wrongful Act statute. On appeal, the Supreme Court of Appeals reversed relying on the saving clause of § 8–634 which states:

"[B]ut if any such action is brought within such period of one year after such person's death, and for any cause abates or is dismissed without determining the merits of such action, the time such is pending shall not be counted as any part of such period of one year, and another suit may be brought within the remaining period of such one year as if such former suit had not been instituted."

Reasoning that this clause must be liberally construed to afford a trial on the merits, and noting that the second action was virtually identical to the first, the court ruled that the statute had been tolled by the filing of the first action and ordered the trial court to proceed to an adjudication of plaintiff's claim.

Here the government sought to invoke § 26–59 to produce a result which, in effect, is expressly contrary to what is allowed in the courts of Virginia.

responsible for the crash. The district court concluded that this loan arrangement was tantamount to subrogation and held the insurers to be the real parties in interest in the suit. The court went on to dismiss the action because the insurers, as real parties in interest, had not filed an administrative claim within two years as required by 28 U.S.C. § 2401(b).

On appeal, the Sixth Circuit reversed, stating:

"Within one year after the crash, the Federal Aviation Administration received a formal written notice fully detailing the nature and amount of the claim that Executive Jet was asserting against the United States. It does not appear that the Government would have been more inclined or better able to negotiate a settlement of the claim if the insurers had been listed as claimants. In fact, the Government is asserting as defenses lack of negligence, assumption of the risk, and contributory negligence. Thus it appears that litigation would have been necessary even if the insurers had filed an administrative claim. It seems unlikely that the Government would have wished to settle this large and factually unusual claim, but it certainly was not prevented from attempting a compromise simply because the insurers did not join in Executive Jet's administrative claim." [6] 507 F.2d at 515.

Likewise, in this case, the fact that plaintiffs' names and not that of a personal representative appeared on the face of the complaint in no way hindered the government's desire to settle the claim or its efforts to prepare a defense on the merits.[7] In fact, were the government to pursue either course of action, one of the first steps that it would have to undertake would be to ascertain which survivors are entitled to claim under the Virginia statute. Furthermore, even if plaintiffs had procured a Virginia personal representative, under the Regulations, that representative would have had to present the claim in the name of the claimant.[8] Thus the government can in no way contend that it was surprised or deceived in its pretrial deliberations. In

6. Several other courts have also rebuffed the government in its attempts to prevail on an inflexible application of the Regulations. In *DeGroot v. United States*, 384 F.Supp. 1178 (N.D.Iowa 1974), plaintiffs filed an administrative claim with the United States Postal Service and attached thereto an "Exhibit A" demanding recovery on behalf of their minor sons. When the case was filed, the government moved to dismiss the claims on behalf of the children charging that the claims had not been properly presented under the Regulations. The court held that the Service had sufficient notice and information on the claims to make a proper determination as to settlement possibilities. In *Young v. United States*, 372 F.Supp. 736 (S.D.Ga.1974), the court ruled on the validity of several administrative claims where the person filing the claim failed to identify fully minor children of the deceased on whose behalf the actions were brought. Finding that there would be no prejudice to the government and only injustice to the children were the strict technicalities of the Regulations followed, the court concluded that the jurisdictional requirement of § 2675 had been satisfied. *See also, Ozark Air Lines, Inc. v. Delta Air Lines, Inc.*, 63 F.R.D. 69 (N.D.Ill.1974); *Sky Harbor Air Service, Inc. v. United States*, 348 F.Supp. 594 (D.Neb.1972). *But see Lunsford v. United States*, 418 F.Supp. 1045 (D.S.D.1976).

7. Nor would the presence of a Virginia personal representative provide any advantage to the government. The practical effect of Section 26–59 is to make certain that all wrongful death actions brought against citizens of Virginia will be tried in state and not federal courts for the simple reason that diversity will be lacking. *Grady v. Irvine, supra,* 254 F.2d at 228. The law thus provides protections for the residents of Virginia by assuring them a local forum. It is difficult to imagine how compliance with this statute could be of any benefit of concern to the government at the administrative stage. Should this case ever reach the courts of Virginia, plaintiffs will then be required to obtain the services of a resident representative. *Grady v. Irvine, supra,* 254 F.2d at 228.

8. 28 C.F.R. § 14.3(e) provides:

"A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative."

short, the expediting function which Congress envisioned as the role of the administrative procedure was not impeded here.

 This decision does not constitute a waiver of any of the Regulations as applied to plaintiffs' case. A court may not exercise a general power of waiver because to do so would violate the principle that the government "is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Bialowas v. United States, supra,* 443 F.2d at 1049. Rather, this decision merely requires the government to apply Regulation 14.3(c) in a manner which is consistent with the congressional purpose behind the administrative procedure and declares the government's interpretation of Virginia substantive law to be incorrect.[9]

In sum, Regulation 14.3(c) should be read as restricting the right to bring a claim to only those persons who have a legal right to recover, whether that be in a representative capacity or as beneficiaries, for wrongful death under the substantive law of the place of the accident. What a claimant must do is establish to the agency's satisfaction that he or she has such a right under the law of that state. If the agency then denies that the claimant is entitled to recover, suit may be brought in federal court. At that time, the court will review the agency determination as to the inadequacy of the administrative claim. Should it appear that the agency was correct in its determination that the claimant was not entitled to recover under the law of the place of the accident, then the court must dismiss the action for lack of jurisdiction due to failure to present a proper administrative claim. *See, e. g., Caton v.*

*United States, supra,* 495 F.2d 635. If the agency was incorrect in its evaluation, as the FAA was here, then the suit will go forward.

Having determined that plaintiffs complied with § 2675, the Court would ordinarily grant plaintiffs' motion for declaratory judgment and deny defendant's counter motion to dismiss. After this opinion was drafted, however, the parties filed a stipulation of dismissal. As a result, both motions are moot and will be dismissed accordingly.

---

9. Viewed in this light, this decision is not at odds with the line of cases which have dismissed the tort claims of plaintiffs for noncompliance with the Regulations. In the majority of these cases, plaintiffs have failed to state a sum certain for damages on their claim form as required by Regulation 14.2(a). *E. g., Caton v. United States, supra,* 495 F.2d 635; *Avril v. United States,* 461 F.2d 1090 (9 Cir. 1972); *Bialowas v. United States, supra,* 443 F.2d

1047; *College v. United States,* 411 F.Supp. 738 (D.Md.1976). Such a failure materially hampers the government's efforts to reach a settlement. Were the courts to condone these failures by granting waivers, the congressional purpose behind the administrative procedure of facilitating settlement would be undermined. The decisions are consistent then as upholding congressional intent although they prove to be opposite in result.