GORDON H. BALL, INC., a Nevada Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. R–78–0116 BRT.

United States District Court, D. Nevada.

Dec. 6, 1978.

Woodburn, Wedge, Blakey, Folsom & Jeppson, Casey W. Vlautin, Reno, Nev., for plaintiff; Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Stuart G. Oles, Seattle, Wash., of counsel.

Bruce E. Titus, Atty., Civil Div., Dept. of Justice, Washington, D. C., B. Mahlon Brown, Jr., U. S. Atty., Shirley Smith, Reno, Nev., for defendant.

## MEMORANDUM OPINION ·

BRUCE R. THOMPSON, Senior District Judge.

Plaintiff has instituted this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80. Venue lies in this Court by virtue of plaintiff's incorporation in the State of Nevada. 28 U.S.C. §§ 1346(b) & 1402(b). Plaintiff alleges that it has pursued its administrative remedies, as required by 28 U.S.C. § 2675, *as amended in 1966*, P.L. 89–506, 80 Stat. 306, by filing an unsuccessful claim with the Department of

Interior under the Teton Dam Disaster Assistance Act, P.L. 94–400, 90 Stat. 1211 (1976). The government has filed a motion to dismiss contending that plaintiff should have filed a separate claim under the Federal Tort Claims Act. Because more than two years has passed since the occurrence giving rise to the alleged liability, the government urges that the dismissal be with prejudice, as the defect, if any, is incurable. 28 U.S.C. § 2401 (imposing a two-year limitations period within which to present claim to agency involved); e. g., *Blain v. United States*, 552 F.2d 289 (9th Cir. 1977) (dismissal with prejudice when did not present proper administrative claim within two years).

This is the question posed:

Does the filing of an unsuccessful claim with the Department of Interior under the Teton Dam Disaster Assistance Act suffice as the exhaustion of administrative remedies made jurisdictionally prerequisite to suit under the Federal Tort Claims Act, 28 U.S.C. § 2675?

The facts are undisputed. In 1976, the plaintiff, Gordon H. Ball, Inc., was under contract with the United States to construct a new American Falls Dam on the Snake River in Idaho. Work was to commence in the first week of June. On June 5, 1976, the Teton Dam failed. The waters in the Snake River rose to flood level and did not subside until June 22, 1976. No work could be performed on the American Falls project during that period, and plaintiff incurred standby labor and equipment costs of $37,899.52. In its complaint, plaintiff attributes these costs to the failure of the Teton Dam, and the failure of the Teton Dam to negligent design and construction by the Bureau of Reclamation, United States Department of Interior.

On February 14, 1978, plaintiff filed a claim under the Teton Dam Disaster Assistance Act with the officer specially designated by the Department of Interior as the Teton Claims Officer, 43 C.F.R. § 419.0–5(g) (1977). Relief under the Teton Dam Disaster Assistance Act has been geographically limited to claims arising in the area declared by the regulations as a "major disaster area," 43 C.F.R. §§ 419.0–5(*o*) & 419.1–1(a)(3). Plaintiff's area of operations fell outside the major disaster area and its claim was denied by the Teton Claims Officer.

Had plaintiff wished to pursue an objection to the ruling that its claim was not covered by the Teton Dam Disaster Assistance Act, it could have appealed that ruling to the United States District Court, for the District of Idaho. Section 9(b), P.L. 94–400. Instead, plaintiff filed this action under the Federal Tort Claims Act. The complaint does not allege the filing and denial of an administrative claim under the Tort Claims Act. The affidavit of Morgan W. Pace, Regional Officer in Charge of tort claims against the Bureau of Reclamation, U.S. Department of Interior, states that his office never received an administrative torts claim from the plaintiff. It should be noted that the limitations period imposed by 28 U.S.C. § 2401 did not run until June 5 or possibly 22, 1978. Inasmuch as plaintiff's Teton Dam claim was finally denied on May 1, 1978, it still could have filed a torts claim with the Department of Interior at that time.

This case presents an issue of first impression. Other cases which have addressed the administrative filing requirements of the Federal Tort Claims Act have regarded them as jurisdictional prerequisites, deserving of strict construction and not susceptible to waiver. Irregularities in filing have, in certain instances, been forgiven when the route taken by the claimant afforded the government opportunities for administrative settlement equal to those it would have had if a proper claim had been filed.

Liability under the Teton Dam Disaster Assistance Act is without regard to fault or proximate cause. *See* Preamble to P.L. 94–400; 43 C.F.R. § 419.0–2(c); H.R.Rep. No. 94–1423, 94 Cong., 2d Sess.; Sen.Rep. No. 94–963 (94th Cong., 2d Sess. Plaintiff's claim under the Teton Dam Disaster Assistance Act thus did not include any allegation regarding negligence or fault. Plaintiff has not directed our attention to any princi-

ple of Idaho tort law which imposes liability without fault under the circumstances. Moreover, the Teton Dam Disaster Assistance Act stresses the independence of relief thereunder from that affordable under any other provision of law. *See* P.L. No. 94–400, § 9(b); 43 C.F.R. § 419.9–2(c); *cf. also* P.L. No. 90–400, §§ 3(c) & (f).

Section 2675(a), Title 28, of the Federal Tort Claims Act requires any person having a tort claim against the United States to present the claim to the "appropriate Federal agency" and await a final denial before initiating court proceedings. The failure of an agency to act on a claim within six months of its submission is deemed a "final denial." The administrative claim must be submitted within two years "after such claim accrues," and court proceedings instituted within six months of final agency action, or be "forever barred," 28 U.S.C. § 2401(b). The regulations elaborate on these provisions, detailing the information needed properly to submit a claim:

> "For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. If a claim is presented to the wrong Federal agency, that agency shall transfer it forthwith to the appropriate agency." 28 C.F.R. § 14.2(a) (1977).

Numerous cases have held that compliance with section 2675(a) is a "jurisdictional prerequisite" which cannot be waived. *See House v. Mine Safety Appliances Co.*, 573 F.2d 609, 614 (9th Cir. 1978), *cert. den.* —— U.S. ——, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978); *Blain v. United States*, 552 F.2d 289 (9th Cir. 1977); *Best Bearings Co. v. United States*, 463 F.2d 1177 (7th Cir. 1972); cases collected in *Annot.*, 13 A.L.R. Fed. 762, 768 (1972). This rules flows from the ancient precept that, as sovereign, the government "is immune from suit save as it consents to be sued," *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), and from the corollary proposition that, as a waiver of sovereign immunity, the Federal Tort Claims Act must not be judicially expanded to invite liability on terms and conditions more lenient than those Congress saw fit to impose. *See Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Collazo v. United States*, 372 F.Supp. 61, 62 (D.Puerto Rico, 1973). The courts should not lose sight, however, of the broadly remedial purposes the Act was intended to serve, and at least one court has taken the position, "[t]hat the Act ends the immunity defense does not furnish a ground for niggardly interpretation . . ." *Kelley v. United States*, 568 F.2d 259, 262 (2d Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978); *see also Kielwien v. United States*, 540 F.2d 676, 681 (4th Cir. 1976), *cert. denied* 429 U.S. 979, 97 S.Ct. 491, 50 L.E.2d 588 (1976) (dictum).

No case has directly addressed the issue before this Court. Indeed, the government has cited only one case in which a party sought to proceed under the Federal Tort Claims Act on the basis of having filed an administrative claim for benefits pursuant to another federal statute, *Waggoner v. United States*, Civ. No. 74–5–C (N.D.W.Va., filed October 18, 1974) (unpublished). In that case, plaintiff had submitted a claim to the Veterans Administration for survivor's benefits under 38 U.S.C. § 351. Thereafter, she commenced suit under the Federal Tort Claims Act, alleging malpractice on the part of the Veteran's Hospital in its misdiagnosis of her late husband's condition. Stressing the independence of plaintiff's remedies under the Federal Tort Claims Act from her right to benefits under 38 U.S.C. § 351, the Court granted the government's motion to dismiss. The plaintiff correctly argues in its memorandum of points and authorities the case is not dispositive and is clearly distinguishable.

The reported decisions which have addressed the question of when an irregular filing constitutes compliance with section 2675(a) are not entirely consistent with one another. One consideration which helps explain some, but not all the results reached, is the extent to which the irregularity involved implicates the declared purpose of section 2675(a), that of easing court congestion by ensuring full agency review of claims with an eye towards their early administrative settlement. *See* 1966 U.S.Code Cong. & Admin.News, pp. 2515–17. Thus, in *Van Fossen v. United States*, 430 F.Supp. 1017 (N.D.Cal.1977), the court held that survivors need not await the appointment of a "personal representative," as required in wrongful death cases by Virginia law before initiating their FTCA claim against the agency involved, stating:

"[T]he fact that plaintiffs' names and not that of a personal representative appeared on the face of the complaint in no way hindered the government's desire to settle the claim or its efforts to prepare a defense on the merits. In fact, were the government to pursue either course of action, one of the first steps that it would have to undertake would be to ascertain which survivors are entitled to claim under the Virginia statute. Furthermore, even if plaintiffs had procured a Virginia personal representative, under the Regulations, that representative would have had to present the claim in the name of the claimant. Thus the government can in no way contend that it was surprised or deceived in its pretrial deliberations. In short, the expediting function which Congress envisioned as the role of the administrative procedure was not impeded here."

Id. at 1023–24 (footnotes omitted). Similarly, the Court of Appeals for the Second Circuit has held that a party who, unaware that his tortfeasor was a federal employee, commences suit in the state court need not be remanded to the agency involved in search of an administrative settlement following removal to federal court. *Kelley v. United States, supra*. In so holding the court stressed the fact that the "Federal

Drivers Act" of 1961 expressly authorizes the Attorney General to settle such actions, 28 U.S.C. § 2679(e), and that "notice" to the government and concomitant settlement opportunities were the same as if an administrative claim had been filed. Contra, *Driggers v. United States*, 309 F.Supp. 1377 (D.S.C.1970); *also Smith v. United States*, 328 F.Supp. 1224 (W.D.Tenn.1971).

The cases that elevate the requirement that the claim demand a "sum certain" (28 C.F.R. § 14.2(a), supra) to the status of a jurisdictional prerequisite find similar justification in the policies underlying the enactment of section 2675: without knowing the amount at stake the government is seriously hampered in its settlement negotiations. *See Van Fossen v. United States*, 430 F.Supp. at 1024 n. 9. A mother thus cannot sue for medical expenses incurred as a result of her daughter's injuries based on her daughter's administrative claim. The agency in that instance would not have had the opportunity to review the damages claimed, as those attributable to medical expenses were not properly includable in the daughter's claim. *Green v. United States*, 385 F.Supp. 641 (S.D.Cal.1974); *accord. Collazo v. United States*, 372 F.Supp. 61 (D.Puerto Rico 1973). In *House v. Mine Safety Appliances Co.*, supra, the court held that, as a jurisdictional matter, claimants who failed to specify the amount of their claim were barred, even though their claims were in the same group with a number of others based on the same incident, each of which contained a prayer for $1,000,000.

The cases interpreting the requirement that an administrative claim filed in a representative capacity document the authority to so act illustrate the foregoing principles. Thus, in *Caidin v. United States*, 564 F.2d 284 (9th Cir. 1977), the court held that a self-declared class representative had not properly presented his administrative claim because he had failed to establish his authority to act on behalf of the class; his failure to have done so rendered the amount actually involved uncertain, as the agency was unsure which, if any, of the claims he was attempting to assert should

be settled. *Accord. Blain v. United States,* supra. These cases should be compared with *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508 (6th Cir. 1974). The court held that an insurer was not barred by its failure to have filed a claim when its insured had done so within the statutory period:

> "Within one year after the crash, the Federal Aviation Administration received a formal written notice fully detailing the nature and amount of the claim that Executive Jet was asserting against the United States. It does not appear that the Government would have been more inclined or better able to negotiate a settlement of the claims if the insurers had been listed as claimants."

Id. at 515.

█ Relief under the Teton Dam Disaster Assistance Act is expressly made available without regard to "proximate cause" and without reference to government "fault." Preamble to P.L. 94–400; 43 C.F.R. § 419.1–0(b). Relief under the Federal Tort Claims Act, by contrast, depends upon proof of actionable conduct. See 28 U.S.C. §§ 2674 & 2675; 28 C.F.R. § 14.4 (requiring submission of evidence bearing upon the government's responsibility for damages claimed). Plaintiff urges that the failure to have alleged the grounds upon which liability may have been predicated is immaterial, citing a government report in which the Department of Interior apparently concluded that negligent design and construction caused the Teton Dam to fail. Thus, it is argued that the settlement opportunities and incentives were identical whether a claim was filed under the Teton Dam Disaster Assistance Act or the Federal Tort Claims Act.

It is true that in determining the amount to be awarded a claimant, both the Teton Dam Disaster Assistance Act and the Federal Tort Claims Act authorize agency investigation of the sum claimed. However, the amount claimed as damages by the plaintiff was never reviewed by the Teton Claims Officer, as the claim was denied for the reason that plaintiff's area of operations fell outside the "major disaster area," as defined by the regulations. Critical review of that claim thus was never given. Furthermore, assuming that the government has admitted fault in conjunction with the failure of the Teton Dam, the inquiry into liability under the Federal Tort Claims Act would not have ended there. Issues of proximate cause and foreseeable consequences surely would have been explored in settlement negotiations. More important, the government would have considered the possibility that its alleged negligence came within the "discretionary function" limitation on the waiver of immunity otherwise effected by the Act. Indeed, both the House and Senate Reports appear to have believed this to be the case: in support of the appropriations request, the failure of the Teton Dam was expressly analogized to the Texas City, Texas disaster of 1955, where disaster relief legislation was passed in response to a Supreme Court ruling that the government's activities were within the "discretionary function" exemption from tort liability. H.R.Rep. No. 94–1423, 94th Cong., 2d Sess. (1976); S.Rep. No. 94–963, 94th Cong., 2d Sess. (1976). Thus, it cannot be said that plaintiff's filing under the Teton Dam Disaster Assistance Act afforded the government the same opportunities to review and settle the claim as it would have had if plaintiff had filed under the Federal Tort Claims Act.

Plaintiff urges next that section 9(a) of the Teton Dam Disaster Assistance Act contemplates a claimant's initiating a court action under the Federal Tort Claims Act once his claim has been denied by the Teton Claims Officer. That section provides as follows:

> "An action shall not be instituted in any court of the United States upon a claim against the United States which is included in a claim submitted under this Act until the Secretary or his designee has made a final disposition of the pending claim. A pending claim may be withdrawn from consideration prior to final decision upon fifteen days written notice, and such withdrawal shall be deemed an

abandonment of the claim for all purposes under this Act. After withdrawal of a claim or after the final decision of the Secretary or his designee on a claim under this Act, a claimant may elect to assert said claim or institute an action thereon against the United States in any court of competent jurisdiction under any other provision of applicable law, and upon such election there shall be no further consideration or proceedings on the claim under this Act."

The legislative history of that section suggests that, rather than dispensing with the filing requirements of the Federal Tort Claims Act, it was intended to establish the independence of claims under the Teton Dam Disaster Assistance Act from those that may exist under any other provision of applicable law. Thus, as originally drafted, section 9(a) read as follows:

"No action shall be instituted in any court of the United States upon a claim against the United States submitted to the Secretary, or his designee under this Act, unless and until the Secretary, or his designee shall have made a final disposition of such claif. *Provided*, that the claimant may, upon fifteen (15) days written notice, withdraw such claim from consideration by the Secretary, or his designee."

Sen.Rep. No. 94–963, 94th Cong.2d Sess. The explanation accompanying its amendment by the House Committee on the judiciary indicates that it was intended to make clear that:

"When a claim has been withdrawn and thereafter abandoned as provided in the amended section, the claimant may elect to assert a claim based upon the same subject matter *by taking administrative or legal action against the United States under any other provision of applicable law*."

H.R.Rep. No. 94–1423, 94th Cong., 2d Sess. (emphasis added). Moreover, the regulations dispel any ambiguity on this score, expressly providing:

"No provision of these regulations shall be construed as providing or creating a right of action against the United States,

its agents or employees, *nor shall these regulations be construed as waiving or extending any applicable statute of limitations or any other requirement prerequisite to any such right of action*."

43 C.F.R. § 419.0–2(c) (emphasis added). Plaintiff's argument that section 9(a) of the Teton Dam Disaster Assistance Act "waives" the administrative filing requirements of the Federal Tort Claims Act thus is untenable.

■ Finally plaintiff urges an estoppel against the government. As the foregoing case discussion indicates, the cases unanimously reject the proposition that an estoppel or waiver may be attributed to the sovereign. *See also Mann v. United States*, 399 F.2d 672 (9th Cir. 1968). Recognizing that it has no literal application to the case at bar, plaintiff nonetheless argues that 28 C.F.R. § 14.2(a) imposed an obligation on the Teton Claims Officer to forward plaintiff's claim to the individual charged with the responsibility of reviewing tort claims against the Bureau of Reclamation. That section provides in pertinent part:

"If a claim is presented to the wrong federal agency, that agency shall transfer it forthwith to the appropriate agency."

Plaintiff did not simply file its claim with the wrong agency, but failed to file any tort claim at all. As the court in *Green v. United States, supra*, stated in rejecting the argument that the agency should have alerted the mother that a separate claim, in addition to that filed by the daughter, would be required to recover medical expenses for which the mother took responsibility:

"[I]nherent in plaintiffs' argument is a suggestion that if the United States has received some sort of constructive or actual notice of a potential claim it has an affirmative duty to go out and solicit an administrative claim to ensure that the jurisdictional prerequisite to suit by the claimant is properly laid. Such a proposition is not only [foreign] to the concept of adversary, administrative jurisprudence, but is also unsupported as a matter of law."

385 F.Supp. at 644. *See also Provancial v. United States*, 454 F.2d 72 (8th Cir. 1972) (Department of Justice not obligated to forward claim to Veteran's Administration which, on its face, appeared to be directed only to the Department of Interior); *Hejl v. United States*, 449 F.2d 124 (5th Cir. 1971); *Muldez v. United States*, 326 F.Supp. 692 (E.D.Va.1971).

In consideration of the premises,

*IT HEREBY IS ORDERED* that the action entitled above be dismissed.