Antoine Hubert **PROVANCIAL,**
**Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**
No. 71-1207.

United States Court of Appeals, Eighth Circuit.

Jan. 21, 1972.

As Corrected Feb. 1, 1972.

John J. Simpson, Winner, S. D., for appellant.

William F. Clayton, U. S. Atty., David R. Gienapp, Asst. U. S. Atty., for appellee.

Before MATTHES and LAY, Circuit Judges, and HUNTER, District Judge.

ELMO B. HUNTER, District Judge.

Appellant, Antoine Hubert Provancial, is a twenty-seven year old male Indian who is an enrolled member of the Rosebud Sioux Tribe in South Dakota. Under date of November 13, 1969, he filed a claim against the United States in the sum of $250,000 for loss of sight of his right eye. The loss allegedly was the result of an arrest and detention incident involving two employees of the Police Department of Mission, South Dakota. On May 20, 1970, the Department of the Interior administratively denied the claim. Appellant then brought his action on the claim in the United States District Court for the District of South Dakota.

The case was tried to the Court without a jury. Judge Bogue (1) denied appellant's request to amend his complaint to include a medical malpractice claim; and (2) held that the arresting officers of the Mission Police Department were not employees of the United States within the meaning of the Federal Tort Claims Act, and, therefore, that the federal district court lacked jurisdiction. This appeal followed his judgment of dismissal.

The pertinent facts as they relate to the two questions presented on this appeal are relatively undisputed. On July 16, 1969, appellant, while accompanied by two other persons, was arrested within the City of Mission on a charge of driving while intoxicated. He was taken directly to the Mission city jail and incarcerated by the arresting officers despite his alleged requests for medical aid.

The arrest was made by Charles Herman and Elmer Bear Heels, officers of the Mission Police Department and employees of the City of Mission, a city incorporated by the State of South Dakota and lying entirely within the boundaries of the Rosebud Indian Reservation. These two officers also were deputized special officers of the Department of Interior, Bureau of Indian Affairs. Each thereby held a special commission granting power to arrest Indians within the Indian Reservation. They were acting under this authority in making the arrest and detention of appellant.

Appellant remained in the Mission jail from the evening of July 16, until approximately 2:00 a. m. on July 17th, at which time an officer of the Rosebud Police, Wayne Claymore, arrived and transported appellant twelve miles to the tribal jail at Rosebud.

In support of his claim, appellant alleged that shortly before his arrest he was endeavoring to fix the battery of his car which had stalled, by striking a portion of the battery with a wrench, unexpectedly causing battery acid to splash into his right eye. He asserts he communicated this event and his need for medical attention to the officers at Mission, and later to the authorities at Rosebud, but that he was not given any aid or medical assistance until he was taken to the Public Health Hospital at Rosebud about 10:00 a. m. on the 17th by officers of the tribal police.

### The Amendment Contention

On November 13, 1969, appellant through his attorney filed his claim against the United States Government by sending it to the Department of Justice, which forwarded it to the United States Department of Interior. The claim specifically named the two police officers at Mission as the negligent parties, and did not mention the names of nor allege any negligence against the Rosebud officers, the Rosebud Hospital or any of the doctors or other personnel of the Rosebud Hospital.

At the commencement of the trial appellant unsuccessfully moved to amend his complaint to include a malpractice claim against the United States based on the alleged negligence of the government physician who had treated appellant at the Rosebud hospital. In denying the request to amend, Judge Bogue ruled that the new claim sought to be added to the case was one that had not been presented to the appropriate federal agency and finally denied by such agency as required by 28 U.S.C. § 2675(a).

▪ We are persuaded that Judge Bogue correctly denied the requested leave to amend. The original claim sent to the Department of Justice concerned at most only the alleged negligent actions of two specifically named officers purportedly acting under the authority of the Bureau of Indian Affairs. The Department of Justice appropriately forwarded that claim to the Department of the Interior, which administratively examined and finally denied it.[1] The requested amendment was for the purpose of presenting a new and different claim of medical malpractice involving a medical doctor employee of the United States Public Health Service. The two claims are obviously distinct and different, and involve different federal agencies. The Bureau of Indian Affairs is a part of the Department of the Interior. 25 U.S. C. § 1. The Public Health Service is a part of the Department of Health, Education and Welfare, administered by the Surgeon General under the supervision and direction of the Secretary. 42 U.S. C. § 202. The latter claim for which leave to amend was sought had not been presented to the appropriate federal agency, The United States Public Health Service, and finally denied by it prior to the institution against the United States of any tort claim action based on it, as required by statute.[2]

After entry of judgment of dismissal in the case by Judge Bogue, appellant's counsel received a letter from the Department of the Interior to the effect that the original notice which it had reviewed and finally denied on May 20, 1970, was misconstrued by Judge Bogue to include just the inquiry as to whether the Mission, South Dakota officers who arrested Mr. Provancial were employees of the United States within the meaning of the Federal Tort Claims Act when in fact "our administrative determination was not so limited, but considered the entire incident and denied the claim on behalf of the United States."[3] If, as the Department of Interior asserts in its letter, the original notice of claim and

---

1. There was nothing contained in the claim to alert the Department of Justice to believe that any other agency was involved.

2. 28 U.S.C. § 2675(a) provides, "An action shall not be instituted upon a claim against the United States for money damages for . . . personal injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall first have presented the claim *to the appropriate Federal agency* and his claim shall have been finally · denied by the agency in writing and sent by certified or registered mail." (Italics added.)

3. To prevent a possible miscarriage of justice, we have sustained appellant's motion requesting that we take judicial notice of this letter and consider its implications. We note that government counsel in the trial before Judge Bogue, and on this appeal contend the malpractice claim was not within the original notice of claim and, hence, was not finally denied by the appropriate federal agency so as to permit appellant to add it to the case by amendment of his complaint.

its administrative denial by the Department of the Interior did include the medical malpractice claim involving the physician-employee of the Public Health Service the effect is that appellant would be unable to present that claim at any future time because it would be barred by the six months limitation period established in 28 U.S.C. § 2401(b). However, as we have ruled above, the malpractice claim was not included in the original notice of claim. Nor are we presented with any authority to indicate that the Department of the Interior through its counsel is authorized to act for the United States Public Health Service or the Department of Health, Education and Welfare in receiving and administratively rejecting a claim for which the latter is the appropriate agency for presentment to and review of that claim under 28 U.S.C. § 2675(a).

Turning to a consideration of whether the two arresting officers of the City of Mission Police Department were employees of the Federal Government within the meaning of 28 U.S.C. § 2675(a) at the time of their alleged negligent acts, we are convinced that they were. Each of them was a deputized special officer of the Department of Interior, Bureau of Indian Affairs.[4] Each thereby held a special commission granting him power to arrest Indians within the Indian Reservation. In their capacity as employees of the City of Mission they did not possess the power to arrest Indians within the Indian Reservation. 28 U.S.C. § 2671 provides that "as used in this [tort claims] chapter . . . the term 'Employee of the government' includes officers or employees of any federal agency . . . and persons acting on be-

half of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." Clearly, in making the arrest of appellant and in detaining him for delivery to tribal authorities, the officers were acting as employees of the Federal Government within the meaning of Section 2675(a) of the Tort Claims Act as defined by Section 2671. They were acting on behalf of a federal agency (the Department of the Interior, Bureau of Indian Affairs) in an official capacity (special officer of that agency) and while so acting were temporarily in the service of the United States albeit without compensation.

In view of the above holdings, we remand this case to the District Court for appropriate action in accordance with this opinion.

---

4. "The office of deputy special officer was established by regulation which reads as follows: [25 CFR 11.301, 11.302]

   2.15 *Issuance of Deputy Special Officer Commissions.*

   1. *Policy and Purpose.* It shall be the policy of the Bureau of Indian Affairs to issue Deputy Special Officer Commissions to persons who serve without compensation for the purpose of obtaining the cooperation and assistance of State, County and local law enforcement officers who may be in a position to render assistance in the maintenance of law and order on Indian reservations.

   . . .

   2. *Authority.* Authority for the Issuance of Deputy Special Officer Commissions is contained in 18 U.S.C. 3055."