**Dennis ROONEY, Plaintiff–Appellee,**

**Reliance Insurance Co.,
Plaintiff–In–Intervention–Appellee,**

v.

**UNITED STATES of America, Defendant
& Third–Party Plaintiff–Appellant,**

v.

**CONTEL CORP. et al., Third–Party
Defendants.**

**No. 77–4028.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1980.

Decided Dec. 31, 1980.

Michael J. Singer, Dept. of Justice, Washington, D.C., for defendant and third–party plaintiff–appellant.

R. Jay Engel, San Francisco, Cal., for plaintiff–appellee.

Before ELY, TRASK and CHOY, Circuit Judges.

CHOY, Circuit Judge:

The Government appeals from a judgment entered under the Federal Tort Claims Act (FTCA). The judgment awarded damages to Rooney for injuries sustained when he fell from a radar dome. We affirm.

## I. *Facts*

The United States contracted with a joint venture for it to paint and to maintain various radar domes (radomes). The contract contained numerous provisions regarding safety and allocation of responsibility. Under the terms of the contract, radome crew members were to have a minimum of one year's actual experience. The contractor was given the responsibility to select and to supervise its employees. The Government reserved the right to inspect, to oversee performance of the contract, and to suspend or to terminate the contract, but it was not required to do so.

Rooney was employed by the joint venture and, without the minimum experience required by the contract, was assigned with three other employees to paint radomes at Mt. Tamalpais Air Force Base in Mill Valley, California. The supervisor of the crew left the job site after the first day. An engineering technician for the Air Force was present at the radome site, however.

On October 20, 1971, the third day of work at that job, Rooney apparently failed to tie in to the safety line after ascending the dome. He somehow slipped and fell from the 55–foot radome to a catwalk 15 feet above the ground. He was flown to a nearby military hospital and then was transferred to San Francisco General Hospital.

On October 31, 1972, Rooney filed a Standard Form 95 with the United States Air Force, claiming damages in the amount of

$2,000,000. Rooney named Mt. Tamalpais as the place of the accident and referred to the fall and his subsequent treatment in describing the accident. In describing the basis of his claim, he stated only that "[t]he United States of America, by and through its agents, servants and employees negligently and carelessly treated, transported and cared for the claimant."

Rooney did not receive a decision on his claim within six months, so, pursuant to 28 U.S.C. § 2675(a), he filed suit against the United States. His complaint alleged medical malpractice by government employees at Letterman Army Hospital. On August 16, 1974, Rooney successfully moved to amend his complaint to include allegations that he fell while performing intrinsically dangerous work on federal property and that his injuries were the result of the Government's negligent operation and supervision of the work.[1]

The Government filed a third–party complaint against the contractor, designating as defendants Contel Corporation and Information Technology, Inc., a joint venture, and each corporation individually. The Government also filed a motion to dismiss the accident–related claim or, in the alternative, for summary judgment on the grounds (1) that the district court had no jurisdiction because Rooney had failed to file an administrative claim alleging that the Government's negligence caused his fall and (2) that the statute of limitation barred filing the required claim. The district court denied the motion.

The district court dismissed the medical malpractice claim, but found the United States liable under each of Rooney's three theories–for negligently retaining Contel even after it had actual knowledge of the radome crew's inexperience and of the dangerous conditions which proximately caused

1. On August 28, 1974, Rooney filed a second suit alleging that Government negligence was a proximate cause of the injuries he sustained from the fall. This action was consolidated into the new claim for relief in the amended complaint of the original action.

2. Much of the evidence in the court below revolved around the method used to ascend the

Rooney's injuries; for breaching a nondelegable duty by failing to ensure that Contel took adequate precautions;[2] and for failing to provide safe places of employment, safe methods, and safety devices as required of a statutory employer under the California Labor Code. The district court concluded that the contract entitled the Government to indemnification to the extent that Rooney's accident was caused by the contractor's negligence and apportioned the liability–30% to Rooney, 25% to the Government, and 45% to the contractor. The court awarded damages in the amount of $795,446.33, of which the United States was held to be liable for $423,733.87 and was granted judgment against the contractor for $272,400.35.

## II. Jurisdiction

■ The Government contends that Rooney's administrative claim alleged only medical malpractice and that, because no administrative claim was submitted alleging the Government's negligence with respect to the fall, the district court lacked jurisdiction. We do not agree.

The United States, as a sovereign, may not be sued except insofar as it consents to be sued. *United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity must be strictly interpreted. *United States v. Sherwood*, 312 U.S. at 590, 61 S.Ct. at 771.

■ The FTCA, 28 U.S.C. §§ 1346, 2671 et seq., is only a limited waiver, making the United States liable to the same extent as a private party for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while act-

radome. The crew used the double–line method that allowed an individual to tie in to the safety line only after ascent. The single–line method allowed the individual to tie in to the safety line during the ascent. Rooney claimed that if he had used the latter method he would not have fallen as he did.

ing within the scope of his office or employment." 28 U.S.C. § 1346(b); *United States v. Orleans*, 425 U.S. at 813, 96 S.Ct. 1975; *see also House v. Mine Safety Appliances Co.*, 573 F.2d 609, 613 (9th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978). To invoke the jurisdiction of the court a claimant must follow the explicit procedural rules of the FTCA. *Caidin v. United States*, 564 F.2d 284, 286 (9th Cir. 1977).

■ "An action shall not be instituted upon a claim against the United States for money damages for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). The claim must be presented "within two years after such claim accrues." 28 U.S.C. § 2401(b). This claim requirement is jurisdictional and cannot be waived. *House v. Mine Safety Appliances Co.*, 573 F.2d at 614.

■ The primary purpose of the claim requirement is "to expedite the fair settlement of tort claims asserted against the United States." S.Rep.No.1327, 89th Cong., 2d Sess. 2, *reprinted in* [1966] U.S.Code Cong. & Ad. News, pp. 2515, 2516; *Caidin v. United States*, 564 F.2d at 286 & n.3. To fulfill this purpose, the claim must provide notification of an incident and injury, must adequately identify the claimant(s), must be filed by the claimant himself or his duly authorized agent or legal representative, and must state a claim for damages in a sum certain. 28 C.F.R. § 14.2(a);[3] *see Caidin v. United States*, 564 F.2d 284 (9th Cir. 1977).

■ The Government would have us also require a claimant to state his legal theory for recovery. This we cannot do.

In his claim, Rooney named Mt. Tamalpais Air Force Base (the place where he fell from the radome) as the place of the accident and described the accident by stating:

The claimant, DENNIS ROONEY, sustained injuries as a result of a fall and subsequent medical care. The fall occurred October 20, 1971. At the time of the fall, the claimant was in the process of painting a radar dome. He was transported from the site of the fall by United States Air Force personnel to Letterman Army Hospital. He was treated at Letterman Army Hospital and thereafter transferred by U. S. Government servants, agents and employees to the San Francisco General Hospital in the City and County of San Francisco, California.

Thus he specifically gave the Government notice that his claim was for "injuries [sustained] as a result of a fall and subsequent medical care."

It is true that, in another section of the Standard Form 95, asking the claimant to "state the nature and extent of injury which forms the basis of this claim," Rooney did not specifically mention anything about the fall. However, he did "state the nature and extent of [his] injury." He stated that:

[t]he United States of America, by and through its agents, servants and employees negligently and carelessly treated, transported and cared for the claimant, DENNIS ROONEY, causing severe and painful injuries to his health and welfare including, but not limited to his left leg, his left forearm, injury to his lungs, loss of oxygen, loss of consciousness, respiratory insufficiency, renal insufficiency, neurological disfunction, malnutrition and other injuries.

That portion stating that he was "negligently and carelessly treated, transported and cared for" is surplusage. Rooney gratuitously informed the Government of a legal theory upon which he was basing his claim. He is not jurisdictionally limited by that language, however.

■ Contrary to the Government's contention, it was not necessary for Rooney to

---

**3.** 28 C.F.R. § 14.2 has not been changed since 1970. Thus, the claim requirements are the same now as when Rooney filed his Standard Form 95.

allege in his administrative claim that the Government's negligence caused his fall or that any specific federal employee was responsible for the injuries sustained in the fall. Moreover, even though Rooney's original *complaint* stated a claim for relief based only upon medical malpractice, that does not make his *administrative claim* defective.

The Government relies on *Provancial v. United States*, 454 F.2d 72 (8th Cir. 1972), for the proposition that filing an administrative claim with respect to an injury allegedly caused by negligent arresting officers could not preserve the claimant's rights with respect to a medical malpractice claim. The Government is correct as far as it goes. However, the Government fails to note that in *Provancial* the claims were against two different agencies and that "[t]here was nothing contained in the claim to alert the Department of Justice to believe that any other agency was involved"; the claim also failed even to mention the name of the hospital or hospital personnel. 454 F.2d at 74 & n.1. Here, on the other hand, Rooney identified both Mt. Tamalpais Air Force Base and Letterman Army Hospital. He submitted the claim to the Air Force whose connection with the injury is solely by reason of the fall from the radome. Unlike the claimant in *Provancial*, Rooney did present his claim to the appropriate federal agency.

A claim under the FTCA "shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a). Rooney has complied with this requirement. Using a Standard Form 95 he notified the Government of the date and place of both the fall and his subsequent medical care. He

claimed to have sustained injuries as a result of both events. He listed all the injuries that he sustained, and he claimed that he was damaged in the amount of $2,000,-000.[4] No more was required.

The district court did not err in determining that Rooney's administrative claim was sufficient to apprise the Government of the nature and extent of the claim based both upon the fall and upon the alleged medical malpractice. Thus the lower court properly exercised jurisdiction over the action.

### III. *Liability*

Under the FTCA the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, "in accordance with the law of the place where the act or omission occurred,"[5] 28 U.S.C. § 1346(b).

■ As a general rule an employer is not liable for the negligence of an independent contractor or his employees. *See Slagle v. United States*, 612 F.2d 1157, 1162 (9th Cir. 1980). Exceptions to this rule have arisen, primarily in instances where the employer breaches a duty of care, rather than where the employer is held vicariously liable for the contractor's misconduct.[6] *See, e.g.*, Restatement (Second) of Torts §§ 414, 416, 428.

■ The district court found the United States liable on three grounds: (1) for negligently retaining Contel after it became aware of the contractor's incompetence; (2) for breaching a nondelegable duty to take, or to ensure that the contractor takes, adequate safety precautions; and (3) for violating its duty as a statutory employer by failing to take steps to eliminate an unsafe condition of which it had actual knowledge.

---

**4.** The Government argues that the entire $2,000,000 was intended to state the value of the malpractice claim only, but that argument is spurious. Clearly the $2,000,000 figure was intended to cover all of the injuries Rooney sustained, from whatever cause.

**5.** There is no dispute that California law applies in the instant case.

**6.** The Government correctly contends that the United States may not be held vicariously liable for the negligent acts of its independent contractor. *See United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). Here, however, we are holding the United States liable for its own negligence in failing to ensure adequate safety precautions.

Concluding, as we do, that the Government is liable for breaching its nondelegable duty to ensure adequate safety precautions were taken by Contel, we do not address the other theories for liability.

■ California has followed the Restatement (Second) of Torts by imposing a nondelegable duty of due care on the employer of an independent contractor where the work to be performed involves special dangers. *See Slagle v. United States*, 612 F.2d at 1162; *Van Arsdale v. Hollinger*, 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 (1968); *Aceves v. Regal Pale Brewing Co.*, 24 Cal.3d 502, 156 Cal.Rptr. 41, 595 P.2d 619 (1979); Restatement (Second) of Torts §§ 413, 416, 427 (1965). Such work includes work dangerous in the absence of special precautions. *Van Arsdale v. Hollinger*, 68 Cal.2d at 253, 66 Cal.Rptr. at 25, 437 P.2d at 513.

■ Where such danger is present in the work, the Government may be held liable for injuries to an employee of an independent contractor caused by the absence of the proper precautions, even though in its contract the Government merely reserved the rights to inspect the work performed and to stop the work if adequate precautions were not taken. *Thorne v. United States*, 479 F.2d 804, 809 (9th Cir. 1973); *cf. McGarry v. United States*, 549 F.2d 587, 590 (9th Cir. 1976) (giving deference to California law in a Nevada case and finding a government duty to become "reasonably satisfied" that safety guidelines are complied with), *cert. denied*, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977). The fact that the contract requires specified safety precautions does not negate the employer's liability where the contractor fails to follow those specifications. *See Van Arsdale v. Hollinger*, 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 (1968).

The Government argues that the "method of ascending the radome was not an extra-dangerous condition giving rise to a nondel-egable duty." It is not the "method of ascending the radome" per se that creates the nondelegable duty. Rather, it is the risk of falling from the radome absent adequate safety precautions.

■ The risk of falling was sufficiently great for the Government to require a minimum level of experience for the crew members and for the use of safety lines, along with other safety precautions. The district court concluded that using the single–line method of ascent, which would have required tying in to the safety line before ascending the radome, was the safer method for inexperienced climbers,[7] and could have prevented Rooney from falling. The actual application of the legal standard of care to the facts of the case (*i.e.*, the determination on the ultimate question of negligence) is reviewed under the clearly erroneous standard. *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978). We cannot say that the lower court was clearly erroneous in this finding.

Rooney, an inexperienced crew member, fell from the radome because he was not tied–in to the safety line. The fall, which was foreseeable given the nature of the work and the fact that the double–line method of ascending the radome did not allow tying–in to the safety line until the climber reached the top of the ladder, proximately caused Rooney's injuries.

The Government reserved the rights to inspect and to stop work as necessary. In these circumstances it had a duty to ensure that the contractor took adequate safety precautions, but it breached that duty when it knowingly permitted the contractor to use such inexperienced, careless crew members without requiring adequate safety precautions. Thus, the district court correctly concluded that the Government was liable for Rooney's injuries.

## IV. *Damages*

The circumstances of this case present a question as to the proper apportionment of

---

7. The engineering technician stated that the crew's "inexperience constantly manifested itself," and stated that he was aware of their poor work habits, lack of training and experience and unfamiliarity with the prescribing directive.

damages. Three parties were negligent here: 1) the plaintiff Rooney, 2) the Government, and 3) the contractor. The Government contends that, even if it is liable for its own negligence, it cannot be held liable for the damages apportionable to its joint tortfeasor, the contractor.

■ Under California law, each concurrent tortfeasor in a multiple–defendant, comparative negligence case is jointly liable with the others. *See American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). This rule applies regardless of the apportionability of negligence under comparative negligence principles. *Id.* Under the California approach, *culpability* may be apportioned among defendants; but each defendant remains liable for the full amount of *damages* proximately resulting from that defendant's negligence. In Rooney's case, the fault is divisible but the resulting injuries are not. Since each defendant's negligence was a proximate cause of Rooney's indivisible injuries, each defendant is liable for the full amount of damages. The question of indemnification is a matter to be decided as between the defendants. *Id.,* and *see Associated Construction and Engineering Co. v. Workers' Compensation Appeals Board*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978). (California methodology for determining credit and indemnification in multi–defendant, comparative negligence cases where plaintiff has received workers' compensation benefits.)

■ Applying California law to the facts of this case we find that the Government is responsible for all damages other than the 30% attributable to Rooney's comparative negligence. We are faced with an anomaly which we must accept: the Government, which is the least culpable of the three negligent parties, will bear the greatest burden in damages.

The Government argues that this in effect holds the Government vicariously liable for the contractor's negligence. The Government's joint liability, however, is not the equivalent of vicarious liability. The Government is not being held liable for the contractor's share of damages. Rather, either or both defendants are liable for all damages not attributable to the plaintiff. Actually, the Government is being held responsible for the same amount as it would be if it were held vicariously liable. The theoretical difference remains, however, under California law.

We express neither approval nor disapproval of the California rule of joint liability, although we do note that other courts have chosen a different approach to the multi–defendant dilemma. *See, e.g., Barron v. United States*, 473 F.Supp. 1077 (D.Haw.1977). (Applying Hawaii law, Government not liable for damages attributable to statutorily–immune contractor. "The logical, as well as the fair and reasonable, result is for the Court to determine the percentage of fault attributable to the government and apply the resulting percentage to the damages sustained by plaintiff." *Id.* at 1088.) Under § 1346(b), however, we must apply the controlling California law. The Government is jointly liable for the damages attributable to both defendants.

The judgment of the district court is AFFIRMED.