**Betty I. GARDNER, Plaintiff/Appellant,**

v.

**UNITED STATES of America,
Defendant/Appellee.**

**No. 84–6615.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1985.

Decided Jan. 16, 1986.

Larry Nathenson, Mantalica & Treadwell, Los Angeles, Cal., for plaintiff/appellant.

Elgin Edwards, Asst. U.S. Atty., Los Angeles, Cal., for defendant/appellee.

Before DUNIWAY, Senior Circuit Judge, TANG and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Betty Gardner appeals a judgment for the United States in her suit for the wrongful death of her husband, Semer Robert Gardner (Gardner), who was electrocuted while working for an independent contractor, Action Industries, Inc. (Action), on government property. She brought suit in district court under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674 (1982), alleging that the death of her husband was due to the failure of the United States to provide a safe working place, supervise the work performed, and supply proper safety equipment. The district court entered judgment for the United States. It held that the United States delegated to Action responsibility for safety and that the acts of the United States were not the proximate cause of Gardner's death. We reverse and remand for a determination of whether, under California's nondelegable duty doctrine, the United States breached its duty to Gardner.

## I. FACTUAL BACKGROUND

On July 1, 1975, the United States, through the Air Force, entered into a contract with Action to provide mechanical, structural and electrical maintenance support to facilities located at Los Angeles Air Force Station, El Segundo, California. On November 17, 1978, Action assigned electrician Gardner to remodel office space in Building 100, Los Angeles Air Force Station. The electrical work included removal and relocation of electrical wiring, light switches, electrical outlets and the installation of new light fixtures.

The contract designated Colonel Raymond Thompson, Base Civil Engineer (BCE), to supervise the rewiring operations. Section 1.17 of the contract required the BCE to approve individual work orders for each separate construction project under the contract. Gardner was working under such an order at the time of his death.

In addition, the contract provided that the BCE supervise procedures[1] and that Action request authorization from the BCE before de-energizing utilities.[2] Further, the contract incorporated into its terms the Electrical Facilities Safe Practices Handbook (Handbook) which set out safety procedures.

The Handbook also vested in the BCE sole authority to authorize work on energized lines and equipment.[3] Under Sections 1-9, 7-1, and 7-4 of the Handbook, work on energized lines could not be performed without the BCE certifying that (1) de-energized lines and equipment would create health or safety hazards or disrupt critical operations, (2) at least two electricians would be present, (3) all necessary protective equipment and special tools would be available, and (4) all other energized or grounded conductors or equipment within reach or which must be climbed through would be covered with rubber lined hose, insulator hoods, rubber blan-

---

1. Attachment 1, section 1.16 of the contract provides:

   The contractor shall develop operating instructions for certain functional areas as directed by the BCE covering methods and techniques to be utilized in the performance of this contract. Functional areas shall include, but not be limited to, procedures for ... interruption of utility services....

2. Attachment 1, section 1.21 of the contract provides:

   Prior to cutting off any utility system or a portion thereof, the contractor shall effect necessary coordination between affected parties and obtain an authorization from the BCE before starting the work.

3. Section G § 7-1 "Work On Lines and Equipment" states:

   Work on electric lines and equipment, requiring the opening or closing of a switching and/or disconnecting device out of sight from the working area, or affecting operational facilities requiring the coordination of an operating organization, will be accomplished under the safe clearance procedures prescribed in this section. These procedures will be administered by the Base Civil Engineer or a designated subordinate supervisor of his organization. Clearance for work on energized lines and equipment will NOT be issued without a certification as provided for in paragraph 1-9.

kets, or would be isolated with suitable barriers.

The contract provided that the technical representative of the contracting office would monitor compliance with the health and safety standards and report violations to the BCE. If a safety violation were noted, the BCE would stop work.

At the time of his death, Gardner was working on a junction box containing various electrical circuits. He had de-energized the circuit on which he was working but left nearby circuits energized. Gardner was working in violation of the Electrical Facilities Safe Practices Handbook; he was working without certification from the BCE, without a second electrician, without a rubber blanket over the circuits, and without an insulator hood. While working, he came into contact with the energized lines causing electrocution.

## II. ANALYSIS

Betty Gardner brought her claim under the Federal Tort Claims Act which holds the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because Gardner's injury occurred at Los Angeles Air Force Station, California law applies.

California follows the Restatement (Second) of Torts by imposing a nondelegable duty on the employer of an independent contractor where the work to be performed involves special danger. Such work includes work dangerous in the absence of special precautions. *Van Arsdale v. Hollinger*, 68 Cal.2d 245, 253, 66 Cal.Rptr. 20, 437 P.2d 508 (1968).

In *Rooney v. United States*, 634 F.2d 1238 (9th Cir.1980), we held pursuant to California's nondelegable duty doctrine that the United States was liable under the Federal Tort Claims Act for breaching its nondelegable duty to ensure adequate safety precautions were taken by an independent contractor who contracted to paint and maintain radar domes.

Where ... danger is present in the work, the Government may be held liable for injuries to an employee of an independent contractor caused by the absence of the proper precautions, even though in its contract the Government merely reserved the rights to inspect the work performed and to stop the work if adequate precautions were not taken.... The fact that the contract requires specified safety precautions does not negate the employer's liability where the contractor fails to follow those specifications.

634 F.2d at 1244. *See also McGarry v. United States*, 549 F.2d 587, 590 (9th Cir. 1976), *cert. denied*, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977) (When independent contractor is employed to do extra-dangerous work, employer has duty to see contractor takes proper precaution to protect those who might sustain injury.); *Thorne v. United States*, 479 F.2d 804, 808 (9th Cir.1973) (Where independent contractor's work digging trenches across steep slope is dangerous, United States Bureau of Reclamation is under duty to see independent contractor takes proper precautions.).

Specifying safety precautions and retaining the right to inspect and stop work are thus not sufficient to relieve an employer of liability when it has contracted out extradangerous work. California law imposes upon an employer an independent duty to ensure safety precautions are followed.

Although the United States correctly contends that it may not be vicariously or strictly liable for negligent acts of its independent contractor under 28 U.S.C. § 1346(b), in *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir.1985), we held that the government may be liable under the Tort Claims Act for a breach of a nondelegable duty. The phrase "nondelegable duty" suggests a type of vicarious or strict liability, but we explained in *McGarry v. United States*, that:

liability for breach of such [non-delegable] duty is neither strict nor vicarious

**838**

liability. It is not liability for the contractor's failure to exercise due care or to employ proper safety precautions. It stems from the duty of the contractor's employer to exercise reasonable care to see that the contractor abides by his responsibilities in that respect.

549 F.2d at 590. Judge Merrill, in his concurrence in *Thorne v. United States,* also explained,

> while the phrase "non-delegable duty" may conjure up visions of vicarious liability beyond the scope of the Tort Claims Act, the duty here owed ... was to exercise reasonable care to see that proper precautions were taken by the contractor. It was breach of this duty ... that results in liability of the United States.

*Thorne,* 479 F.2d at 810 (Merrill, J., concurring).

■■■ Thus, under California's nondelegable duty doctrine the United States is *directly* liable for its own negligence when it fails to ensure that an independent contractor takes adequate safety precautions and the work to be performed involves special dangers. Betty Gardner's claim of breach of the United States' nondelegable duty is thus within the scope of the Federal Tort Claims Act.

While the district court stated in its conclusions of law that the United States had a duty to Gardner and the United States did not breach that duty, the district court did not address the evidence set forth at trial. Specifically, the district court did not address the plaintiff's contentions that (1) at the time of his death, Gardner was working within reach of energized circuits without a second electrician, without a rubber blanket and without an insulator hood, all in violation of the USAF Electrical Facilities Safe Practices Handbook; (2) the BCE did not comply with his contractual duty (a) to supervise the rewiring operations, (b) to approve the individual work orders and particularly the work order for the project on which Gardner was working, and (c) to supervise procedures to assure compliance with the requirements of the Electrical Facilities Safe Practices Handbook; and (3)

the BCE was not, but should have been, aware that Gardner was working within reach of energized circuits without compliance with safety practices.

If the trial court finds that the evidence supports the above contentions, then it appears the United States breached its nondelegable duty to Gardner. However, because the trial court's findings are not sufficiently clear to determine whether California's nondelegable duty doctrine was breached, we reverse and remand for amplification of the findings and, depending on the result thereof, reconsideration of the conclusions of law consistent with this opinion.

REVERSED and REMANDED.