132 F.3d 39
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Taiai NOFOA, Individually and as Special Administratrix of
the Estate of Peni Nofoa, Deceased, and As Next
Friend of Jacob Nofoa, a Minor,
Plaintiffs-Appellants,
v.
UNITED STATES of America; Department of Navy, John Does
1-10; Doe Corporations 1-10; Doe Municipalities
1-10; and Doe Partnerships, Defendants-Appellees,
 No. 96-15973.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Decided Dec. 30, 1997.
 
 Appeal from the United States District Court for the District of Hawaii, No. CV-95-00392-HG; Helen Gillmor, District Judge, Presiding.
 Before: REINHARDT, LEAVY and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Taiai and Jacob Nofoa (collectively, "the Nofoas") appeal the district court's grant of summary judgment to the United States (the "Government") in a suit that the Nofoas instituted under the Federal Tort Claims Act, 28 U.S.C.A. § 2674 (West 1997) (the "FTCA") to recover damages for the August 10, 1992 death of Peni Nofoa, Taiai Nofoa's husband and Jacob Nofoa's father. Peni Nofoa, an employee of a government contractor, Kaneohe General Services ("KGS"), was electrocuted on the Government's property when a tree limb he was cutting made contact with an electrical wire. In granting summary judgment to the Government, the district court concluded that, as a matter of law, the Government was not liable for Peni Nofoa's death under the FTCA. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 1997). We review the district court's grant of summary judgment de novo, see Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996), viewing the evidence in the light most favorable to the Nofoas to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law, see Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).[1] We affirm in part and reverse in part because the record on some claims reflects genuine issues of material fact that preclude a grant of summary judgment.
 
 
 3
 * Hawaii law provides that if the Government retained the right to control KGS's performance or assumed affirmative duties with respect to the safety of KGS's work, it owed a duty of reasonable care to prevent injuries to Peni Nofoa. See Makaneole v. Gampon, 776 P.2d 402, 407 (Haw.Ct.App.1989), aff'd in part and rev'd in part on other grounds, 777 P.2d 1183 (1989). The record furnishes sufficient evidence of the Government's control of KGS, extending beyond the mere reservation of inspection rights and the requirement of compliance with applicable regulations, see Jeffries v. United States, 477 F.2d 52, 56 (9th Cir.1973), and of the Government's breach of its resulting duty of care to defeat the Government's motion for summary judgment on this issue.
 
 
 4
 First, the record contains evidence that the Government knew about KGS's use of nondielectric equipment at work sites. The deposition testimony of Carol Dewitt, a Government employee who worked in the Service Contract Administration Division and was familiar with the contract between KGS and the Government, establishes that she was aware that KGS was using nondielectric equipment at the work site before Peni Nofoa's death. In addition, Pitone Leao ("Leao"), also employed in the Service Contract Administration Division and also familiar with the KGS contract, stated that he had witnessed KGS's use of more than one truck. Coupled with the evidence that KGS had only one dielectric truck, and that the trucks' insulation or lack thereof was readily apparent to the naked eye, Leao's testimony suggests that he, too, was aware of KGS's use of nondielectric equipment.
 
 
 5
 Second, the record shows that the Government circumscribed the methods that KGS could use to perform its work. The contract between KGS and the Government articulated specific guidelines for trimming deciduous and palmaceous trees, including a two-step method for cutting limbs safely; set out requirements for the mode of tree, stump, branch, and root removal; and directed KGS to submit its work schedule to the Government for approval before commencing work. As the Government itself concedes, the Government also made "an affirmative effort" to control the safety of KGS's work: in its preperformance conference with KGS, the Government agreed to conduct safety inspections at KGS's worksites; it required KGS to use certified dielectric equipment; it referred KGS to appropriate safety standards and guidelines; and it posted warning signs at KGS's workplace. However, the record establishes that the Government may have neglected to fulfill the safety obligations that it undertook. The Government may have failed not only to conduct the safety inspections that it undertook to perform, but to request the contractually required dielectric certification of KGS's equipment.
 
 
 6
 This evidence creates genuine issues of material fact as to whether the Government breached its duty of care to Peni Nofoa in its retention of control over the subcontractor. To be sure, the evidence in the record is far from overwhelming in the Nofoas' favor. However, it is sufficient to create a genuine issue of material fact. Thus, we must reverse the district court's grant of summary judgment on this claim.
 
 II
 
 7
 Under Hawaii law, the Government, when it acted as KGS's employer, had a nondelegable duty to take reasonable care to see that KGS took proper precautions to protect those who might sustain injury from extrahazardous work. See Makaneole v. Gampon, 777 P.2d 1183, 1185 (Haw.1989). If "reasonable minds" can disagree "as to whether an activity is inherently dangerous, the determination is a question of fact to be determined by the fact-finder." McMillan v. United States, 112 F.3d 1040, 1044 (9th Cir.1997). Given the July 28, 1992 letter from the Government to KGS informing KGS that tree trimming around electrical power lines "is inherently dangerous due to potential electrical shock as well as height and safety hazards," a reasonable dispute could certainly exist over the question of inherent danger in Peni Nofoa's work.
 
 
 8
 The Government contended at oral argument that Gardner v. United States, 780 F.2d 835, 838 (9th Cir.1986), stood for the proposition that the Government could not be held liable under a non-delegable duty theory because it improperly created vicarious liability on the part of the Government. In actuality, Gardner specifically rejected this interpretation and found no inconsistency between liability under a non-delegable duty theory and the rule against imposing vicarious liability on the United States. Id. at 837-38. Indeed, in Gardner we specifically held that:
 
 
 9
 [U]nder California's nondelegable duty doctrine, the United States is directly liable for its own negligence when it fails to ensure that an independent contractor takes adequate safety precautions and the work to be performed involves special dangers. Betty Gardner's claim of breach of the United States' nondelegable duty is thus within the scope of the Federal Tort Claims Act.
 
 
 10
 Id. at 838.
 
 
 11
 Hawaii's tort law is similar to California's on this issue. Thus, Gardner provides no support for the Government's argument and, in fact, stands for the opposite proposition.
 
 
 12
 In sum, the evidence of the Government's awareness of KGS's use of nondielectric equipment, the unsafe conditions of Peni Nofoa's work, and the Government's failure to conduct safety inspections or require dielectric certifications suggests that the Government breached its nondelegable duty of safety and precludes summary judgment on this issue.
 
 III
 
 13
 The district court correctly granted summary judgment on the Nofoas' claim that the Government breached its duty of care as a landowner who hired an independent contractor to work on the land. See Michel v. Valdastri, Ltd., 575 P.2d 1299, 1301-02 (Haw.1978). Because the hazard that caused Peni Nofoa's death was both "known" and "obvious," the Government had no duty of care as a landowner. See Friedrich v. Department of Transp., 586 P.2d 1037, 1040 (Haw.1978). Even if the Government had such a duty in this instance, it satisfied the duty by warning KGS against the risk of electric shock. See Richardson v. Sport Shinko (Waikiki Corp.), 880 P.2d 169, 178 (Haw.1994). The Government delivered adequate warnings of the risk by posting two warning signs at the work site, notifying KGS of the danger attending work at utility lines, and directing KGS to use extreme caution in performing the work. Thus, the grant of summary judgment was appropriate.
 
 IV
 
 14
 The district court also properly granted summary judgment on the Nofoas' claim that the Government breached its duty as a supplier of electricity. In Hawaii, those in control of an agency that they know or should know is dangerous, "which creates a foreseeable peril to persons or property that is not readily apparent to those endangered, to the extent that it is reasonably possible, [owe] a duty to warn them of such potential danger." Kajiya v. Department of Water Supply, 629 P.2d 635, 640 (Haw.Ct.App.1981). More specifically, a power company owes no duty to inspect or to repair its customer's deteriorated and exposed wires; it has no duty to turn off the electric current in its line "unless it ha[s] actual knowledge of the danger ... or at least had a reasonable basis on which to anticipate it"; and its duty to warn is judged by the facts it knew or reasonably should have known. Naki v. Hawaiian Elec. Co., 442 P.2d 55, 57-59 (Haw.1968). Kajiya and Naki together impose only two legal duties upon the Government as a supplier of electricity and a controller of a potentially dangerous instrumentality: a duty to warn of danger that was "not readily apparent," and a duty to de-energize its lines to the extent it had actual or constructive knowledge of special danger. As discussed previously, the Government satisfied its duty to warn as a matter of law and the danger was readily apparent. The duty to de-energize has been, to date, narrowly construed by the Hawaii courts. Indeed, in Naki, the Hawaii Supreme Court declined to impose liability on a supplier of power even when one of its employees was physically investigating a customer complaint concerning potentially damaged lines. Naki, 442 P.2d at 421-22. The duty has not been extended to a general duty to turn off electricity on main lines and has been characterized as a duty to de-energize at the utility pole. Neither Hawaii, nor any other jurisdiction of which we are aware, has extended the duty to de-energize to situations involving routine maintenance on or around electric lines commissioned by the supplier of power itself. Thus, it would be improper for us to speculate that Hawaii might expand the rule to embrace such activities, and we decline to do so. The district court properly granted summary judgment on this claim.
 
 V
 
 15
 The Government contends that, as a matter of law, we should determine that Peni Nofoa was contributorily negligent and more than fifty percent responsible for his own injuries. Given the genuine issues of material fact we have identified, we cannot say as a matter of law that Peni Nofoa was more than fifty percent comparatively negligent. It may well be that Peni Nofoa's contributory negligence exceeded that of the government. However, this is an issue for determination at trial.
 
 Conclusion
 
 16
 Accordingly, we reverse the district court's grant of summary judgment to the Government and remand for resolution of the following factual issues: 1) whether the Government breached its duty of care arising either from its retained control over KGS or from the extrahazardous nature of Peni Nofoa's work; and 2) the extent of Peni Nofoa's contributory negligence, if any. We affirm the district court's grant of summary judgment on every other count. Each party shall bear its own costs on appeal.
 
 
 17
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Under the FTCA, tort actions against the United States are governed by "the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b)(1) (West 1997). In such actions, the United States "shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674 (West 1997). In this case, therefore, the Government is liable to the same degree as a private individual under Hawaii law