# EDWARD CAMPBELL *v.* H. HACKFELD & CO., LTD.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 3, 1910.                    DECIDED FEBRUARY 8, 1910.

## HARTWELL, C.J., PERRY AND DE BOLT, JJ.

MASTER AND SERVANT—*fellow servant.*

> A master owes to a servant the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work. If instead of personally performing this obligation the master engages another to do it for him he is liable for the neglect of that other, which in such case is not the neglect of the fellow servant no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such. The question of liability turns rather on the character of the act than on the relations of the employes to each other.

EVIDENCE—*directed verdict.*

> The evidence required submission of the case to the jury. Directed verdict set aside.

### OPINION OF THE COURT BY PERRY, J.

Plaintiff claims damages for an injury received on July 6, 1902, while working in the hold of the bark Aeolus. At the close of the evidence for the plaintiff the presiding judge, on motion of defendant, directed the jury to render a verdict for the defendant, the ground of the direction being that the negligence relied upon was that of a fellow servant of the plaintiff and that therefore the defendant was not liable. The sole question is whether this direction was correct. At the trial the corporate capacity of the defendant was admitted. Evidence was adduced sufficient to sustain findings of fact as follows: That the plaintiff, with other stevedores had been engaged in discharging coal from the ship named and towards the end of the afternoon was sweeping coal dust in the lower hold; that the defendant was the employer of the plaintiff and the others so

engaged; that one Capt. Dabel was the "boss" in the control of all of the work of discharging and was the sole representative of the defendant in that respect; that the main work of discharging having been completed it became necessary to remove from the lower hold to the upper deck two trucks weighing about one hundred pounds each, and that the ordinary method of removing them was by passing a rope sling through them, attaching the sling to a hook at the end of a hoisting rope and then hoisting them with steam power; that Capt. Dabel ordered the use of a rope sling for the purpose and directed one Damien, a stevedore on deck, to procure a piece of rope for the purpose; that Damien made search of the vessel but found only one piece of rope and reported to Dabel that that piece was decayed in parts and unfit for the purpose and dangerous; that Dabel thereupon directed another stevedore, Tom Pedro, to procure a rope; that Pedro also searched and found the same piece only and brought it to Dabel, likewise protesting that it was unsuitable for the purpose; that no other rope was on the ship of sufficient size and strength for the purpose desired; that the piece of rope found was in fact worn and unsound in parts and insufficient and unsafe; that Capt. Dabel well knowing the condition of the rope took it out of Tom Pedro's hands, threw it into the hold and directed one or more of the stevedores below, other than the plaintiff, to sling the trucks with it and to hook on for hoisting; that at least one of the stevedores below who was thus directed called back to Dabel protesting similarly against the use of the rope; that Capt. Dabel ordered the men to proceed with the work and to "hurry up;" that the trucks were fastened and hooked on as ordered and the hoisting done slowly and that while the trucks were being hoisted the rope broke and the trucks fell, striking the keelson, and one or more parts of one of them rebounded and struck the plaintiff and caused the injuries complained of; that the plaintiff at the moment was to one side of the hatchway and did not hear the

call to "stand clear" if such call was given; that no such call was given; that plaintiff took no part in the attempt to remove the trucks and was wholly free from any contributory negligence in the matter; that the injuries were caused solely by the use of the unsafe rope and that there was no negligence in the method of slinging or hoisting the trucks or otherwise in the manner of the performance of the work.

"As to what is the test of a common service such as to relieve the master from liability from the injury of one servant through the negligence of another," the supreme court of the United States says that this "is also one of the vexed questions of the law and (that) perhaps there is no one matter upon which there are more conflicting and irreconcilable decisions in the various courts of the land." *Railroad* v. *Baugh,* 149 U. S. 368, 379. It is unnecessary to consider what other courts hold on the subject. The law applicable to the case at bar has been clearly declared by the supreme court of the United States. "The general rule is that those entering into the service of a common master become thereby engaged in a common service and are fellow servants and prima facie the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. There are, however, some duties which a master owes as such to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties. \* \* \* If the master be neglectful in any of these matters it is a neglect of a duty which he personally owes to his employes and if the employe suffer damage on account thereof the master is liable. If instead of personally performing these obligations the master engages another to do them for him he is liable for the neglect of that other which in such case is not the neglect of a fellow servant no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such." *Railroad* v. *Peterson,* 162 U. S. 346, 353.

In *Hough* v. *Railroad*, 100 U. S. 213, 219 the court quoted with approval the following statement from a Massachusetts case: "The rule of law which exempted the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants, does not excuse the exercise of ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from that obligation. The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require. * * * The corporation is equally chargeable, whether the negligence was in originally failing to provide, or in afterwards failing to keep its machinery in safe condition."

Again in *Railroad* v. *Baugh,* supra, the court said: "Prima facie all who enter into the employ of a single master are engaged in a common service and are fellow servants and some other line of demarcation than that of control must exist to destroy the relation of fellow servants. * * * He (the servant) has a right to look to the master for the discharge of that duty" (to provide reasonably safe appliances) "and if the master instead of discharging it himself sees fit to have it attended to by others that does not change the method of obligation to the employe or the latter's right to insist that reasonable

precaution shall be taken to secure safety in these respects. Therefore, it will be seen that the question turns rather on the character of the act than on the relations of the employes to each other. If the act is one done in the discharge of some positive duty of the master to the servant then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty then there should be some personal wrong on the part of the employer before he is held liable therefor. * * * And at common law whenever the master delegates to any officer, servant, agent or employe high or low the performance of any of the duties above mentioned which really devolve upon the master himself then such officer, servant, agent or employe stands in the place of the master and becomes a substitute for the master and vice principal and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence." See pp. 384, 386, 387, 388. See also *Railroad* v. *Moore,* 29 Kans. 452, 460, quoted with approval in *Railroad* v. *Baugh; Car Co.* v. *Parker,* 100 Ind. 181, 188, 189; *Benzing* v. *Steinway,* 101 N. Y. 547, 552, 553, and *Boyd* v. *Blumenthal,* 52 Atl. (Del.) 330, 331.

Within these rules there was, in our opinion, sufficient evidence to sustain a verdict for the plaintiff. If Capt. Dabel, as we think the jury would have been justified in finding from the evidence, was the superintendent of the defendant and was by it charged with the duty of furnishing to the men directly engaged in discharging and sweeping all appliances needed in the work and with knowledge of the fact furnished the unsound rope and no other, the defendant is liable for his negligence. If it can be successfully contended that the evidence was insufficient to show that Capt. Dabel was charged with that duty the case is equally bad for the defendant for upon the evidence the jury would be required to find that that duty was not delegated to an agent and that the defendant did not perform it. In

other words, the evidence was ample to support a finding that, whether the defendant acted through Dabel or through others, it furnished on the ship no rope whatever other than the piece described by the witnesses and that was obviously unsound and unsafe. In the absence, at least, of evidence of instructions to the employes to the contrary, the duty upon the defendant was to furnish the appliances within convenient reach and furnishing elsewhere is not prima facie a compliance with that duty.

Cases are reported in the books where an ample supply of reasonably safe appliances had been placed within convenient reach and through the negligence of a foreman or superintendent an unsafe implement was selected and given to the laborers for use; also cases where with the good appliances furnished an unsafe one was used which was not furnished by the master. No such complications exist in the case at bar.

The case, perhaps, which most resembles this is that of *Campbell* v. *Gillespie Co.*, 69 N. J. L. 279, 281, 282, where a servant, directed by the superintendent to procure a certain tool selected an obviously defective one from a lot, all of which were defective, and handed it to a fellow laborer for actual use. The employer was held liable. "The duty of the master to use reasonable care to furnish proper tools to his workmen is not controverted. * * * If, therefore, it is true that the pin when furnished was imperfect and that no other pin fit for the work could be found upon the premises the defendant was chargeable with actionable negligence. * * * But if the drift pin at the time it was taken by him was unfit for use and there was not a reasonable supply of safe pins upon the premises accessible to him and from which he might have selected a good one, the master is in fault. It is true that if the defect in the pin taken was an obvious one the servant who took it, although it was the only one to be had, assumed the obvious risk of danger to himself in its use, but he cannot assume an obvious risk in such case for a fellow servant who does not know of the danger.

Campbell v. Hackfeld, 20 Haw. 33.

As to a fellow servant, it will not be presumed that his co-servant would have selected an obviously dangerous implement when he might have chosen a good one." In the case at bar the plaintiff, there was evidence to show, had no knowledge of the defects in the rope.

The case of *Mejea* v. *Whitehouse*, 19 Haw. 159, does not require any ruling to the contrary. All that the court there held was that upon the facts of that particular case no duty cast by law upon the master had been violated and that the foreman who committed the act claimed to constitute negligence was a mere fellow servant and not a vice principal or representative of the master.

The verdict is set aside and a new trial ordered.

*P. L. Weaver (Magoon & Weaver and C. K. Quinn* with them on the brief) for plaintiff.

*C. F. Clemons and C. C. Bitting (Thompson & Clemons* on the brief) for defendant.