BEN W. MICHEL, Plaintiff-Appellant, *v*. VALDASTRI,
LTD., a Hawaii corporation, Defendant-Appellee

NO. 5835

MARCH 8, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

*Per Curiam.* This is an action for injuries sustained by plaintiff-appellant Michel on defendant-appellee Valdastri's premises. The plaintiff was an employee of KEMS, Inc., an independent electrical contracting firm, and the defendant was engaged in the business of manufacturing large, heavy concrete items used in the construction industry.

Valdastri's operations were conducted in a large, rectangular building in which three overhead travelling cranes were installed. These were utilized in lifting and transporting the concrete items to different locations within the building in the course of the manufacturing process. The cranes were situated some thirty feet above the ground level of the building and were powered entirely by electricity. Each crane could be operated individually by push-button controls located at ground level. The cranes were similar in their basic component operational design in that each of them had a lifting mechanism, or hoist, mounted upon a bridge. The bridge, or gantry beam, of each crane spanned the width of the building. On the ends of each of the gantry beams were wheels resembling those used on railroad cars. These wheels rested upon a pair of parallel I-Beam tracks, or "side rails," which were located on either side of the building and which extended along the entire length of the building. This structural arrangement made it possible to roll the cranes from one end of the building to the other. Only two of the three cranes were equipped with some kind of braking system to control this rolling or "gantry" motion.

On the day of the accident, Michel was dispatched by KEMS to repair the center crane's trolley wire by request of Valdastri. With the help of some of Valdastri's workmen, Michel placed an extension ladder against the crane's gantry beam and began his ascent. When he reached the top, the gantry beam moved away from the ladder and both the ladder and Michel fell to the concrete floor. Michel was severely injured as a result of the fall. Testimony was adduced at trial to the effect that the center crane's gantry brakes were not functioning properly.

On the defendant's motion for directed verdict at the close of the plaintiff's case, the trial court ordered the entry of judgment in favor of Valdastri and against the plaintiff Michel. The latter appeals from the judgment of the circuit court.[1]

We reverse. The trial court erred in refusing to allow the plaintiff to adduce evidence of claimed violations of pertinent provisions of the State's General Safety Code which was adopted and promulgated pursuant to the Occupational Safety and Health Law (OSHL), HRS Chapter 396.

Proof of the failure of the defendant to conform his conduct to standards established by law for the protection of the class to which the injured party belongs, when shown to have a legitimate connection to the issue, is admissible as evidence of negligence. *Young v. Hon. C. & D. Co.*, 34 Haw. 426, 435 (1938); *Sherry v. Asing*, 56 Haw. 135, 149, 531 P.2d 648, 658 (1974). In this case, the plaintiff Michel offered to prove that Valdastri had failed to conform to the provisions of the Code dealing with cranes, derricks and hoists. This offer was improperly denied by the trial court. Proof of the defendant's violations of OSHL and the Code would have constituted evidence of negligence and would have required the submission of the issue of negligence to the jury. *Id.* In *Young* this court said:

"[W]here, as here, a municipal ordinance prescribes a duty for the protection and safety of others and there is a

---

[1] The appellant could have been more helpful by filing a reply brief in this case.

reasonable and logical connection between the failure to observe the requirements of the ordinance and the omission claimed to have caused the injury, the neglect of duty imposed by the ordinance is evidence of negligence sufficient to require the question of negligence to be submitted to the jury." 34 Haw. at 435.

Valdastri nevertheless argues that inasmuch as the plaintiff is an employee of an independent contractor, and not its own employee, OSHL is not applicable to the present situation. We disagree. It has long been the established duty of the employer to provide his employees a reasonably safe place to work, *Asaeda v. Haraguchi*, 37 Haw. 556 (1947), and to furnish them with reasonably safe tools, appliances and machinery with which to perform their duties. *Campbell v. Hackfeld*, 20 Haw. 33 (1910). OSHL reaffirms this duty but its emphasis is upon worker safety in any place of employment and not upon the employer-employee relationship.

HRS § 396-3 defines "place of employment" as "any place, and the premises appurtenant thereto, where employment is carried on, except a place the exclusive safety jurisdiction over which is vested by law in any federal agency," and at the time of the accident defined an "employee" as "every natural person who is required or directed by any employer to engage in any employment or to go to work or be at any time at any place of employment for which he is paid compensation."[2] It defines an "employer" as "[e]very person having direction, management, control, or custody of any employment, place of employment, or any employee." By reason of the contractual arrangements between KEMS, Inc. and Valdastri, and by the very nature of the electrical services to be performed, Michel's work of necessity had to be accomplished on Valdastri's premises. We think that these statutory definitions, when applied to situations for which the statute was clearly designed, compel the conclu-

---

[2] HRS § 396-3 was subsequently amended to read: " 'Employee' means every natural person who is required or directed or permitted or suffered by any employer to engage in any employment, or to go to work or be at any time in any place of employment."

sion that the duty of the employer to provide a safe place to work runs to whomever he requires or permits to perform work on his premises. Other state jurisdictions have reached the same result.[3] *See, e.g., O'Melia v. California Production Service, Inc.,* 261 Cal. App. 2d 618, 68 Cal. Rptr. 125 (1968); *Bachner v. Rich,* 554 P.2d 430 (Alaska 1976).

By clearly delineating the level below which the employer may not fall in its statutory duty to provide a reasonably safe place to work, and by providing sanctions for his failure to conform to statutory standards, the legislature hoped "to assure so far as possible, every working man and the State safe and healthful working conditions.'' HRS § 396-2. These standards are particularized in the General Safety Code which, under OSHL, has the force and effect of law.

Valdastri alternatively argues that even where a duty to provide a safe place to work may be found to exist in favor of an employee of an independent contractor, the employer-owner of the premises is nevertheless under no duty to protect the employee from dangerous conditions arising from or intimately connected with the particular defect in the premises or in the machinery which he has been hired to abate or repair. *See, generally,* Annotation, 31 A.L.R.2d 1379 (1953). OSHL recognizes this limited exception. HRS § 396-6 provides that "[n]o employer shall require or direct or permit or suffer any employee to go or be in any employment or place of employment which is not free from recognized hazards that are causing or likely to cause death or serious physical harm to employees or which does not comply with occupational safety and health standards, rules, regulations, citations, or orders made pursuant to this chapter *except for the specific purposes of abating said hazard.''* (Emphasis added) In this case, however, Michel was specifically engaged for the purpose of repairing the crane's trolley wires. He was not em-

---

[3] Contra: Cochran v. International Harvester Co., 408 F.Supp. 598 (W.D.Ky. 1975). The definitions of employer and employee in the federal occupational safety and health act are much more restrictive. See 29 U.S.C. A. § 652. And unlike the Hawaii and California statutes, the federal act does not specifically define place of employment.

ployed to examine or to repair the gantry's braking mechanism, the defective condition of which allegedly caused the gantry beam to move away from the ladder.[4]

Reversed.

*Edward J. Bybee (Rother, Grimes & Bybee,* of counsel) for plaintiff-appellant.

*James F. Ventura (Libkuman, Ventura, Moon & Ayabe,* of counsel) for defendant-appellee.

---

[4] We, of course, are not expressing an opinion as to whether the plaintiff's injuries were the result of his own negligence, or whether, if negligence on the part of the defendant is found by the jury to exist, such negligence was a proximate cause of the plaintiff's injuries.