978 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Denise MOFFITT, Individually and as Guardian Prochein Ami
for Brian Craig Moffitt and Dayton Christopher Moffitt,
Minors, and as Special Administratrix of the Estate of
Clayton E. Moffitt, Plaintiff-Appellant,
v.
UNITED STATES of America and Utility Body Company,
Defendants-Appellees.
Denise MOFFITT, Individually and as Guardian Prochein Ami
for Brian Craig Moffitt and Dayton Christopher Moffitt,
Minors, and as Special Administratrix of the Estate of
Clayton E. Moffitt, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant,
and
Utility Body Company, Defendant-Appellant.
 Nos. 90-15654, 90-15682.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1992.
 Decided Nov. 4, 1992.
 
 1
 Before CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges, and BURNS,* Senior District Judge.
 
 
 2
 Memorandum**
 
 
 3
 Plaintiff-appellant (for convenience, hereinafter referred to as the Moffitts) filed an action against the United States and Utility Body Company (Utility) for the wrongful death of Clayton Moffitt (Moffitt), husband of Denise Moffitt and father of Brian and Dayton Moffitt. The Moffitts appeal the judgments in favor of the United States and Utility. The Moffitts also appeal the district court's denial of their motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The Moffitts seek a reversal of the judgments in favor of United States and Utility and a remand on the sole issue of apportionment of responsibility between the United States and Utility.[1]
 
 
 4
 Utility appeals the district court's denial of its motion to tax attorneys' fees against the Moffitts. Utility also requests an award of the attorneys' fees required to defend this appeal.
 
 
 5
 We have jurisdiction under 28 U.S.C. § 1291 (1988).
 
 BACKGROUND
 
 6
 In 1982 the United States entered into a Defense Administrative Telephone System Agreement (DATS Agreements) with Hawaiian Telephone Company (Hawaiian Telephone) to install and to maintain telecommunication systems at all military bases on the island of Oahu, Hawaii. On March 17, 1987, Moffitt, a telephone lineman for nine years, and two other employees of Hawaiian Telephone were installing and moving telephone cables to new and existing poles at Schofield Barracks on the island of Oahu. Moffitt worked from an aerial lift manufactured by Utility.
 
 
 7
 In preparation for the installation of the telephone cables, one of Moffitt's co-workers had drilled holes on Pole 5XT one foot apart ranging from 21 to 24 feet from the ground. While Moffitt was attaching a telephone cable in the hole at the 22-foot mark, an arc of electricity leapt from the power line to Moffitt; he was electrocuted instantaneously.
 
 PROCEDURAL HISTORY
 
 8
 The Moffitts sued Utility, the manufacturer of the aerial lift in which Moffitt was working at the time of his electrocution, for strict liability, negligence, and breach of warranty. A jury awarded the Moffitts damages of $1,224,727 and found Moffitt 25% negligent, Hawaiian Telephone 55% negligent,[2] the United States 20% negligent, and Utility 0% negligent. The jury's verdict was binding only on Utility. See generally 28 U.S.C. § 2402.
 
 
 9
 The Moffitts also sued the United States[3] under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 et seq. (1988), for negligent failure to supervise an independent contractor engaged in an inherently dangerous activity, vicarious liability, and liability as owner of the premises. The parties agreed pretrial the claims against the United States were to be decided by the court. After the trial against Utility was completed, the court entered its findings of fact and conclusions of law as to the Moffitts' claims against the United States, ordering judgment in favor of the United States.
 
 
 10
 The district court denied the Moffitts' subsequent motion for JNOV or, in the alternative, for a new trial.
 
 
 11
 The Moffitts appeal the judgment granted by the court in favor of the United States, the jury verdict in favor of Utility, and denial of their motion for JNOV or, in the alternative, for a new trial.
 
 
 12
 Utility moved the court to tax attorneys' fees against the Moffitts pursuant to Hawaii Revised Statutes (HRS) § 607-14 (1972) on the grounds that the action pursued by the Moffitts sounded in assumpsit. The district court denied Utility's motion, and Utility appeals the court's decision.
 
 THE MOFFITTS' CLAIMS
 
 13
 A. CLAIMS AGAINST THE UNITED STATES.
 
 
 14
 1. Negligence and Duty of Care.
 
 
 15
 The Moffitts contend the district court erred when it found the United States did not breach any duty owed to Moffitt.
 
 
 16
 The FTCA imposes liability on the government only where "a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). See also Gardner v. United States, 780 F.2d 835, 837 (9th Cir.1986). Hawaiian Telephone was an independent contractor; the issue, therefore, was "whether, and to what extent, a person [i.e., the government] who hired an independent contractor would be liable for injuries suffered by the contractor's employee under Hawaiian law." Barron v. United States, 473 F.Supp. 1077, 1082 (D.Haw.1979), aff'd in part and rev'd in part on other grounds, 654 F.2d 644 (9th Cir.1981).
 
 
 17
 Questions and interpretation of state law are reviewable de novo. Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984). The district court's determination of the standard of care in a negligence claim is a question of law and, therefore, is also reviewed de novo. Bunting v. United States, 884 F.2d 1143, 1145 (9th Cir.1989). The district court's application of the legal standard to the facts is reviewed under the clearly erroneous standard. Miller v. United States, 587 F.2d 991, 994 (9th Cir.1978). The clearly erroneous standard also applies to the district court's finding on proximate causation. Bunting, 884 F.2d at 1145.
 
 
 18
 a. Duty to provide a reasonably safe workplace.
 
 
 19
 Under Hawaii law, an owner of land who hires an independent contractor has a duty to provide the independent contractor's employees with a reasonably safe place to work. See Michel v. Valdastri, Ltd., 59 Haw. 53, 56-57, 575 P.2d 1299, 1301-02 (1978). The Moffitts contend the district court's conclusion that the United States provided a reasonably safe workplace for Moffitt was clearly erroneous.
 
 
 20
 The Moffitts assert the United States did not provide a reasonably safe workplace because: (1) the United States did not eliminate known electrical hazards before allowing Hawaiian Telephone employees to install telephone cables at Schofield Barracks, and (2) the United States did not correct the location of Pole 5XT even though it was aware the pole was too close to the overhead power lines in violation of the National Electric Safety Code (NESC) (1987).[4]
 
 
 21
 The parties did not dispute that placement of Pole 5XT violated NESC standards, which require a six-foot vertical and five-foot horizontal clearance between power lines and other objects. NESC, however, permits trained telecommunication crews in uninsulated lifts to approach within two feet of 7,200-volt power lines, the type of power line involved in Moffitt's fatal accident. NESC § 43, Table 430-1. This standard for approach distances has also been adopted in both federal and state occupational safety and health regulations. See Occupational Safety and Health Administration Regulations (OSHA), 29 C.F.R. §§ 1910.268(a) and (b)(7), Table R-2 (1987); Hawaii State Occupational Safety and Health Administration Standards (Hawaii OSHA), § 12-92-3, Table 92-1 (1982).
 
 
 22
 The district court found Moffitt was an experienced telephone lineman who had received training in identifying live power lines and the dangers posed by same. No power outage was requested by Moffitt, his fellow crew members, or any employees of Hawaiian Telephone before or during the time of the telephone cable installation. The district court found the power lines were approximately two feet above the top of Pole 5XT, satisfying the NESC and OSHA two-foot clearance standards for telecommunication workers. The district court further found Moffitt could have accomplished his job without approaching closer than two feet from the overhead power lines;[5] therefore, the Moffitts did not establish that the location of Pole 5XT or the distance between the overhead power line and Pole 5XT was the proximate cause of Moffitt's fatal accident. We do not find the district court's conclusions clearly erroneous.
 
 
 23
 The Moffitts also contend the United States was required, pursuant to the United States Army Corps of Engineers Safety and Health Requirements Manual EM 385-1-1 (ACE Requirements) (1984), to shut off the power before allowing Hawaiian Telephone's linemen to install telephone cables or, in the alternative, to ensure Hawaiian Telephone employees did not go within ten feet of the power lines.[6] We reject this contention.
 
 
 24
 ACE Requirements apply only to projects undertaken by the United States Army Corps of Engineers (ACE). ACE Requirements § 1. The Moffitts did not claim ACE was involved in Hawaiian Telephone's work at Schofield Barracks. Even if ACE Requirements did apply, the FTCA does not provide a remedy for violation of these requirements. Le Suer v. United States, 617 F.2d 1197, 1199 (5th Cir.1980) (Although ACE "is authorized to issue regulations for its own operational purposes, there is no Congressional authorization for the Corps to create a duty of care to business invitees leading to liability under the Federal Tort Claims Act. Violation of the Corps' safety standards, therefore, does not constitute actionable negligence").
 
 
 25
 Based on the foregoing, we agree with the district court's conclusion that the United States did not breach its duty to provide a reasonably safe workplace for Moffitt.
 
 
 26
 b. Duty of reasonable care to prevent injury to Moffitt.
 
 
 27
 Hawaii law also provides that the owner of a worksite who retains the right to control an independent contractor's performance or assumes affirmative duties with respect to safety of the work to be performed owes a duty of reasonable care to prevent injuries to the independent contractor's employees. Makaneole v. Gampon, 7 Haw.App. 448, 454-55, 776 P.2d 402, 407 (1989) (citing Restatement (Second) of Torts § 414 (1965)), aff'd in part and rev'd in part on other grounds, 70 Haw. 501, 777 P.2d 1183 (1989). The nature and extent of control by an employer over an independent contractor's work is a question of fact "to be determined by a consideration of all the circumstances, ... and both the contractual provisions and the evidence of actual control are relevant." Makaneole, 7 Haw.App. at 455, 776 P.2d at 407.
 
 
 28
 The Moffitts argue the United States retained control over certain aspects of Hawaiian Telephone's work; therefore, the United States had a duty to prevent injury to Moffitt as one of Hawaiian Telephone's employees. The Moffitts point out the following examples of control exerted by the United States over Hawaiian Telephone's installation of telephone cables: Under the DATS Agreements, the United States had to approve the installation of telephone equipment, DATS Agreements App. II § A1(d), and Hawaiian Telephone had to comply with military safety regulations, DATS Agreements App. II § A1(d), and Hawaiian Telephone had to comply with military safety regulations, DATS Agreements App. II § D; the United States also had control over the electrical power system at Schofield Barracks.
 
 
 29
 In Makaneole, the Hawaii Supreme Court held an employer is liable to an independent contractor's employees only if there is "such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Makaneole, 7 Haw.App. at 454-55, 776 P.2d at 407 (citing Restatement (Second) of Torts § 414 (1965), Comment c). The general right to inspect and to make safety requirements is not enough. Id. Approval of telephone equipment installation by the United States did not extend to approval of the methods, procedures, or manner in which Hawaiian Telephone's work was to be done. See, e.g., DATS Agreements § 1.05. The DATS Agreements did not call for the United States to monitor Hawaiian Telephone's safety procedures.[7] No evidence was presented to indicate the United States supervised Hawaiian Telephone's installation of telephone cables in this or any other instance.
 
 
 30
 We, therefore, agree with the district court's conclusion that the minimal control reserved by the United States over Hawaiian Telephone's installation of telephone cables at Schofield Barracks was not sufficient to create a duty on the part of the United States to prevent injuries to Moffitt as an employee of Hawaiian Telephone.
 
 
 31
 c. Nondelegable duty of care because work was extrahazardous.
 
 
 32
 The district court noted the United States cannot generally be held vicariously liable for the negligence of an independent contractor. See Logue v. United States, 412 U.S. 521 (1973). Hawaii, however, follows the Restatement (Second) of Torts (Restatement) §§ 416 and 427 and imposes a nondelegable duty of care on the employer of an independent contractor when the work is extrahazardous.[8] See Makaneole, 70 Haw. at 504-08, 777 P.2d at 1185-87. See also Barron, 473 F.Supp. at 1082.[9] Under this doctrine, an employer has a nondelegable duty to exercise reasonable care to see the contractor takes proper precautions to protect those who might sustain injury from extrahazardous work. See, e.g., Gardner, 780 F.2d at 837; McGarry v. United States, 549 F.2d 587, 590 (9th Cir.1976), cert. denied, 434 U.S. 922 (1977); Thorne v. United States, 479 F.2d 804, 808-09 (9th Cir.1973).
 
 
 33
 The Moffitts contend the United States had a nondelegable duty to ensure Hawaiian Telephone took proper safety precautions because the work being performed by Moffitt was extrahazardous. The district court found the nondelegable duty doctrine was inapplicable, however, because Moffitt was not engaged in work that was inherently dangerous, that carried a peculiar risk of harm, or that was sufficiently dangerous to require special precautions. The district court's finding on whether work being done by an independent contractor was extrahazardous is binding unless we find it clearly erroneous. See Barron, 654 F.2d at 647.
 
 
 34
 The government may be held liable for failing to take reasonable care to ensure a contractor engaged in extrahazardous work abides by its responsibilities in respect to exercising due care and employing proper safety precautions. McGarry, 549 F.2d at 590. The Moffitts argue the installation of telephone cables is inherently dangerous work or at least dangerous in the absence of special precautions because of the close proximity of live power lines. The cases relied on by the Moffitts primarily involve injured plaintiffs who were required to work directly on electric power lines or whose work was extrahazardous because of unusual conditions at the job site. See, e.g., Gardner, 780 F.2d at 837 (electrician electrocuted while working on a junction box containing energized electrical circuits); Petznick v. United States, 575 F.Supp. 698, 701 (D.Neb.1983) (electrician injured while working on high-voltage, energized electrical transmission lines); Pierce v. United States, 142 F.Supp. 721, 723 (E.D.Tenn.1955) (electrician injured while working on high-voltage electrical transmission lines at electrical substation), aff'd, 235 F.2d 466 (6th Cir.1956); Thorne, 479 F.2d at 806-07 (laborer's excavation of trench was extrahazardous due to steepness of slope on which excavation took place); Barron, 473 F.Supp. at 1080, 1083 (laborer's work on construction of sewer pipes was extrahazardous due to unconsolidated soil subject to regular tidal flooding); Makaneole, 70 Haw. at 502-03, 777 P.2d at 1184 (crane operator's work at construction site was extrahazardous due to unusually steep pitch of roof and precarious footing because of sawdust on the frame). In contrast, Moffitt's job did not require touching power lines nor was there anything peculiar to the job site that demanded special precautions.
 
 
 35
 The Moffitts rely heavily on McGarry. The court in McGarry stated "[i]n our judgment where a contractor is employed to perform work of a sort that may bring the worker into contact with a power line, the work is extra dangerous," McGarry, 549 P.2d at 590. The circumstances McGarry, however, are distinguishable from those in this case. McGarry, a drill rig driver, was employed to drill in the ground for the purpose of geological exploration; the drilling took place in the vicinity of dangerous overhead transmission lines. The locations of the holes to be drilled were marked by another employee of McGarry's company prior to McGarry's arrival at the site. The drill unit driven by McGarry had a 30-foot mast that made contact with the power line directly overhead. When the rig malfunctioned, McGarry investigated the rig, touched the center of the rig, and was electrocuted. Id. at 589. There was no indication McGarry routinely worked in proximity to live power lines, that he was trained to avoid contact with overhead power lines, or that he should have been expected to have knowledge of the potential hazards of overhead power lines.
 
 
 36
 In contrast, Moffitt had nine years experience with Hawaiian Telephone, routinely worked in close proximity to power lines, was instructed to assume all power lines were live and dangerous, and was trained to avoid all contact with power lines. Moffitt's supervisor and co-workers also testified there was nothing unusual about the job site that required special precautions. The possibility Moffitt might inadvertently come into contact with power lines is insufficient to make the installation of telephone cables an inherently extrahazardous job.
 
 
 37
 Although this issue is a close one, we find the district court did not clearly err when it found Moffitt's work was not extrahazardous.[10] Consequently, the United States did not breach a nondelegable duty to protect Moffitt from sustaining injuries.
 
 
 38
 2. Evidentiary rulings.
 
 
 39
 This court reviews a district court's evidentiary decisions for an abuse of discretion. Taylor v. Burlington Northern R.R. Co., 787 F.2d 1309, 1315 (9th Cir.1986).
 
 
 40
 a. Excluding evidence of subsequent remedial measures.
 
 
 41
 The Moffitts contend the district court erred when it excluded evidence of subsequent remedial measures taken by the United States after Moffitt's accident; the Moffitts intended to show the United States had control over the power lines.
 
 
 42
 The United States' control of the power lines was never disputed; therefore, we find the district court did not err when it excluded evidence of same for considerations of undue delay, waste of time, and needless presentation of cumulative evidence. See Fed.R.Evid. 407.
 
 
 43
 b. Limiting the testimony of Bradley Sang.
 
 
 44
 The Moffitts contend the district court erred when it refused to allow an offer of proof to support the Moffitts' request to present further testimony by Bradley Sang. We disagree. "Whether to permit witness testimony is a matter peculiarly within the district court's discretion." Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1434 (9th Cir.1986).
 
 
 45
 Mr. Sang was a communications specialist with the United States Signal Corps; the Signal Corps administered the DATS Agreements. The Moffitts wanted Sang's additional testimony to show the United States exercised control over Hawaiian Telephone's work pursuant to the DATS Agreements. Sang, however, had already testified he had no knowledge on this subject or on the installation of outside cables. We find, therefore, the district court did not abuse its discretion by rejecting the Moffitts' offer of proof and denying the Moffitts' request to present further testimony by Sang.
 
 
 46
 B. CLAIMS AGAINST UTILITY.
 
 
 47
 1. Jury instructions and responses to jurors' questions.
 
 
 48
 The Moffitts contend they are entitled to a new trial because of errors and omissions in the following jury instructions and in the court's answers to the jurors' questions during deliberation.
 
 
 49
 This court reviews jury instructions to " 'determine whether, viewing the instructions as a whole, the court gave adequate instructions on each element of the case to ensure the jury fully understood the issues,' and to determine 'whether the instruction is misleading or states the law incorrectly to the prejudice of the objecting party.' " Martinelli v. City of Beaumont, 820 F.2d 1491, 1493 (9th Cir.1987) (quoting Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986)). The district court is not required to use the exact words proposed by a party nor is it required to incorporate every proposition of law suggested by a party; the instructions only need to describe the applicable law in a manner that permits the jury to intelligently decide the issues. See Los Angeles Memorial Coliseum Comm'n v. National Football League, 726 F.2d 1381, 1398 (9th Cir.), cert. denied, 469 U.S. 990 (1984).
 
 
 50
 a. Jury instruction on joint tortfeasor liability.
 
 
 51
 The district court instructed the jury as follows:
 
 
 52
 "Joint tort-feasors" means two or more persons or corporations jointly or severally liable under a negligence theory for the same injury resulting in the death of Clayton Moffitt, whether or not judgment has been recovered against all or some of them. In other words, any joint tort-feasor may be held responsible to pay the entire judgment, no matter what percentage of liability for damages he is assigned.
 
 
 53
 The Moffitts contend this instruction was misleading because the court did not explain that a joint tortfeasor would only be liable for the entire judgment if another joint tortfeasor was unable to pay or was found not liable. We disagree.
 
 
 54
 The Hawaii Supreme Court has stated the trial court "should inform the jury of the possible legal consequence of a verdict apportioning negligence among joint tortfeasors." Kaeo v. Davis, 68 Haw. 447, 461-62, 719 P.2d 387, 396 (1986). The court also must give instructions sufficient to enable the jury to make its findings on the apportionment issue, which includes an explanation of joint and several liability. Id. The trial judge and the parties are responsible for drafting the form of the instructions. Id. at n. 14.
 
 
 55
 The district court's instruction to the jury adequately explained the somewhat confusing concept of joint and several liability and correctly stated a joint tortfeasor may be held responsible for the entire judgment. See id., 68 Haw. at 461-62, 719 P.2d at 396. The district court then properly answered several questions submitted by the jurors for clarification during deliberation. After reviewing the record, we find the district court's instructions and responses to jurors' questions regarding joint tortfeasor liability were sufficient to enable the jury to make its findings on the apportionment issue.
 
 
 56
 b. Jury instruction on proximate cause.
 
 
 57
 The Moffitts contend the district court's jury instruction on proximate cause was erroneous because it established a "but for" test rather than a "substantial factor" test. Erroneous instructions are grounds for reversal unless it affirmatively appears the error was not prejudicial. See Quedding v. Arisumi Bros., Inc., 66 Haw. 335, 340, 661 P.2d 706, 710 (1983).
 
 
 58
 The first question on the special verdict form asked the jury whether Utility was negligent; the jury did not find Utility negligent. We do not, therefore, have to consider whether the district court's formulation of the instruction was erroneous because the jury never reached the issue of proximate causation.
 
 
 59
 c. Omission of jury instruction regarding manufacturer's continuing duty to warn.
 
 
 60
 Even though Utility sold and delivered the aerial lift to Hawaiian Telephone approximately 17 years before the time of Moffitt's accident, the Moffitts contend the district court erred when it failed to instruct the jury that Utility had a continuing duty to warn Hawaiian Telephone of defects discovered after the manufacture and sale of the aerial lift. The Moffitts concede no such duty clearly exists under Hawaii law; however, the Moffitts assert the Hawaii Supreme Court implicitly adopted the rule of a continuing duty to warn in Ontai v. Straub Clinic and Hosp., Inc., 66 Haw. 237, 659 P.2d 734 (1983), when it reversed the trial court's directed verdict in favor of defendant. The product at issue in Ontai was designed in 1966, sold in 1974, and plaintiff was injured in 1976.
 
 
 61
 The Moffitts misinterpret Ontai. The Hawaii Supreme Court explicitly stated the purpose behind holding a seller responsible for an implied warranty is to protect unsuspecting buyers from receiving inferior goods. Id., 66 Haw. at 249-52, 659 P.2d at 743-45. The court went on to lay out the duties of a seller to warn purchasers; a "continuing duty to warn" after sale and delivery of the product was neither stated nor implied. Even if such a duty did exist under Hawaii law, the Moffitts failed to present persuasive evidence that Utility discovered a defect in the aerial lifts necessitating a warning to prior purchasers. We find, therefore, the district court did not err by refusing to give an instruction regarding a manufacturer's continuing duty to warn.
 
 
 62
 d. Response to jury question regarding standards for warning labels on aerial lifts.
 
 
 63
 During deliberation the jury inquired whether governing standards existed for manufacturer's warning labels on aerial lifts in 1970[11] when the aerial lift used by Moffitt was manufactured and/or sold and delivered to Hawaiian Telephone. The district court referred the jury to the 1969 American National Standards Institute (ANSI) standards, which set out the industry standards in effect the year Hawaiian Telephone bought the aerial lift. The court also pointed out OSHA applies only to employers. The court recommended the jury look at the instructions as a whole to determine the duties and obligations of the parties regarding standards and warning labels.
 
 
 64
 The Moffitts contend the court should have provided the jury with the 1979 ANSI standards even though those standards took effect approximately nine years after Utility sold the aerial lift to Hawaiian Telephone. The Moffitts also assert the court's comment regarding OSHA suggests Utility could delegate its duty to warn to an employer. The Moffitts contend the court's response to the jurors' question was also prejudicial because it failed to inform the jury that the duty to warn is applicable to both negligence and strict liability and that noncompliance with industry standards can be considered evidence of negligence.
 
 
 65
 We find the Moffitts' contentions meritless. The court properly limited its response to the question posed by the jury, and the court's response was accurate.
 
 
 66
 2. Evidentiary rulings.
 
 
 67
 The court reviews the district court's evidentiary decisions for abuse of discretion. Taylor, 787 F.2d at 1315.
 
 
 68
 a. Limitations on Fisher's testimony.
 
 
 69
 The Moffitts contend the district court erred when it limited the testimony of Mr. Fisher, the mechanical engineering expert called by the Moffitts. The district court did not allow Fisher to testify as to whether a "voltage-activated proximity warning device" should have been part of the aerial lift, whether Utility should have been held liable for the accident, or the cause of the accident. The court found Fisher was not a qualified expert on these issues.
 
 
 70
 "The trial court has broad discretion in admitting and excluding expert testimony, and ... [this court] will sustain the court's action unless it is manifestly erroneous." Id. Accordingly, after reviewing the record, we do not find the district court erred by limiting Fisher's testimony.
 
 
 71
 b. Admission of testimony regarding other lawsuits.
 
 
 72
 The Moffitts contend the district court erred when it allowed two of the Moffitts' witnesses to testify about other lawsuits filed by the Moffitts. The Moffitts argue the testimony was unduly prejudicial. See Fed.R.Evid. 403.
 
 
 73
 The district court permitted brief testimony as to the existence of other actions filed by the Moffitts to reflect on the credibility and possible bias and/or prejudice of the testifying witnesses. See supra note 2. The Moffitts have failed to show the probative value of this testimony substantially outweighed the danger of unfair prejudice.
 
 
 74
 We, therefore, find the district court did not abuse its discretion when it allowed testimony regarding related actions initiated by the Moffitts.
 
 
 75
 c. Exclusion of 1979 ANSI Standards.
 
 
 76
 The Moffitts contend the district court erred by excluding the 1979 ANSI Standards regarding warning labels for aerial lifts. We disagree. The district court properly admitted into evidence the 1969 ANSI Standards as the applicable standards since the equipment was manufactured in 1969-70.
 
 
 77
 d. Reliance on federal OSHA regulations.
 
 
 78
 The Moffitts contend the district court erred when it relied on OSHA regulation 29 C.F.R. § 1910.268 in its findings and conclusions to determine liability of the United States. Although the Moffitts argue the testimony of their experts indicated ten feet was the appropriate clearance standard, the Moffitts do not deny 29 C.F.R. § 1910.268(b)(7), Table R-2, permits trained telecommunication workers to approach within two feet of 7,200-volt power lines. We find, therefore, the Moffitts have not demonstrated the court's reliance on the two-foot clearance standard was clearly erroneous.
 
 
 79
 3. Motion for JNOV or, in the alternative, for a new trial.
 
 
 80
 The Moffitts contend the district court erred when it denied their motion for JNOV or, in the alternative, for a new trial because the evidence was insufficient to support judgments in favor of Utility and the United States. We disagree.
 
 
 81
 This court reviews a motion for JNOV by applying the same standard used by the district court; i.e., by determining whether the verdict was supported by substantial evidence. The Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir.1988). JNOV is appropriate if the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can only reasonably support a conclusion in favor of the moving party. Id. This court may not weigh the evidence or substitute its judgment for that of the factfinder. Id.
 
 
 82
 The core of the Moffitts' claim against Utility was Utility's alleged failure to attach labels to the aerial lifts warning of the danger of electrocution and indicating whether the lifts were insulated. When Moffitt was electrocuted in 1987, he was using an aerial lift manufactured by Utility and delivered to Hawaiian Telephone in 1970.
 
 
 83
 After reviewing the record, we find the evidence and its inferences viewed in a light most favorable to Utility were reasonably sufficient to support a jury verdict in favor of Utility. For example, Utility brought in the deposition testimony of Jim Flood, its chief engineer at the time of the accident. Flood testified that Utility's aerial lifts came with warning tags in 1970.[12] Flood further testified these tags were mounted on new units, were mailed to the distributor to affix, or were provided to the purchaser. Although Flood could not recall the exact wording, he stated the tags essentially warned the user about electrical hazards, cautioned the user to maintain a ten-foot clearance from high-voltage power lines, and indicated whether the unit was insulated. Flood also testified the operator's manual contained numerous warnings about use of the aerial lift near live power lines. Utility also presented the testimony of its plant superintendent who testified he had seen warning tags riveted on Utility equipment manufactured prior to 1971 and the testimony of a thirty-year veteran of Hawaiian Telephone who stated he saw metal tags riveted on the aerial lifts when they were new.
 
 
 84
 The facts and conclusions delineated earlier in this memorandum sufficiently support the district court's decision in favor of the United States.
 
 
 85
 Accordingly, we find the district court did not err when it denied the Moffitts' motion for JNOV or, in the alternative, for a new trial.
 
 UTILITY'S CLAIMS
 
 86
 In spite of the lurking vision of a heartless corporation chasing after the few dollars recovered by a widow and her minor children, Utility contends the district court erred when it denied Utility's motion to tax attorneys' fees in the sum of $55,171.88 against the Moffitts pursuant to HRS § 607-14. Utility also asserts the Moffitts' appeal is frivolous and, therefore, Utility requests an award of attorneys' fees under Fed.R.App.P. 38, 28 U.S.C. § 1912, and 28 U.S.C. § 1927.
 
 
 87
 1. Attorneys' fees under HRS § 607-14.
 
 
 88
 HRS § 607-14 authorizes an award of attorneys' fees to the prevailing party in assumpsit actions. "Assumpsit is a common law form of action which allows for the recovery of damages for the nonperformance of a contract, either express or implied, written or verbal, a well as quasi-contractual obligations." Schulz v. Honsador, Inc., 67 Haw. 433, 435, 690 P.2d 279, 281 (1984). Utility contends the Moffitts' claims against it are in the nature of assumpsit. The district court rejected Utility's argument; we also reject Utility's argument.
 
 
 89
 Whether the Moffitts' action sounds in tort or is in the nature of assumpsit is a question of law; therefore, we review de novo. McLinn, 739 F.2d at 1397.
 
 
 90
 The Moffitts brought a wrongful death claim against Utility, alleging strict liability, negligence, and breach of warranty. The mere fact the Moffitts alleged breach of warranty in connection with their wrongful death tort claims does not establish the action sounded in contract; i.e., not every action that joins claims sounding in contract with claims sounding in tort are in the nature of assumpsit. See Healy-Tibbitts Constr. Co. v. Hawaiian Indep. Refinery, Inc., 673 F.2d 284, 286 (9th Cir.1982). The fact that Utility sold the aerial lift to Hawaiian Telephone pursuant to a contract also does not transform the Moffitts' wrongful death action into an action in assumpsit. See, e.g., Littlefield v. United States, 927 F.2d 1099, 1104 (9th Cir.), cert. denied, 112 S.Ct. 299 (1991); Hahn v. Atlantic Richfield Co., 625 F.2d 1095, 1103-04 (3d Cir.1980), cert. denied, 450 U.S. 981 (1981). "The nature of the action as determined from the substance of the entire pleading, the nature of the grievance, and the relief sought is dispositive of the issue whether attorney's fees must be awarded under HRS § 607-14." Azer v. Myers, 793 P.2d 1189, 1197 (Haw.1990), aff'd in part and rev'd in part on other grounds, 795 P.2d 953 (Haw.1990).
 
 
 91
 The fundamental difference between tort and contract is the particular interest protected: "Tort law is predicated on social policy that protects a plaintiff ... in his interest to be free from unreasonable risks of injury" rather than the expectation interests of contracting parties. Hahn, 625 F.2d at 1103-04. Implying a warranty to extend liability to the manufacturer of a defective product has been a common plaintiff's device to achieve the desired result of strict liability. Id. at 1103 (citing Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1963)). See also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 98, at 692-94 (5th ed. 1984). "Although strict liability of a manufacturer to a person not in privity has been based on the theory of a warranty running with a product to the injured plaintiff, the abandonment of the requirement of a contract between the parties involves a recognition that liability is not assumed by any contract agreement but is imposed by law." Hahn, 625 F.2d at 1103.
 
 
 92
 Utility's reliance on Schulz v. Honsador to support its position is misplaced. In Schulz, the Hawaii Supreme Court considered whether a third-party action brought by Honsador was in the nature of assumpsit. Honsador made a general claim for indemnification in its complaint and alleged only that the materials sold to Honsador were defective, which implied a breach of warranty of merchantability. Schulz, 67 Haw. at 434, 690 P.2d at 281. The court noted Honsador did not allege a claim for breach of implied warranty nor a claim of negligence for the failure to warn; the court, therefore, concluded Honsador's claim for breach of warranty was in the nature of assumpsit because the warranty arose solely "from the contractual relationship between buyer and seller." Id., 67 Haw. at 436, 690 P.2d at 282.
 
 
 93
 In contrast, the Moffitts' claims against Utility included negligent failure to warn and breach of implied warranty of fitness. The Schulz court noted the character of an action is determined from the facts and issues stated in the complaint. Id. See also Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981). The Moffitts' wrongful death action is clearly a tort claim. See Healy-Tibbitts, 673 F.2d at 286 ("determination of when an action is in the nature of assumpsit should be based on whether the actual factual allegations are such that historically the action would have been brought in assumpsit").
 
 
 94
 We find, therefore, the district court did not err when it found HRS § 607-14 was inapplicable and accordingly denied Utility's motion to tax attorneys' fees against the Moffitts.
 
 
 95
 2. Frivolous appeal.
 
 
 96
 This court has the discretion and authority to award single or double costs and attorneys' fees against litigants and their counsel for bringing a frivolous appeal. See In Re Becraft, 885 F.2d 547, 548 (9th Cir.1989). See also Wilcox v. Commissioner, 848 F.2d 1007, 1008-09 (9th Cir.1988); Fed.R.App.P. 38;[13] 28 U.S.C. § 1912;[14] 28 U.S.C. § 1927.[15] An appeal is frivolous if the results are obvious or the arguments are wholly without merit. Wilcox, 848 F.2d at 1009.
 
 
 97
 We do not find the results of the Moffitts' appeal obvious nor do we find the Moffitts' arguments wholly without merit. We, therefore, deny Utility's motion for an award of attorneys' fees.
 
 CONCLUSION
 
 98
 Based on the foregoing, the district court's judgment in favor of the United States and the jury's verdict in favor of Utility are AFFIRMED. The district court's denial of the Moffitts' motion for JNOV or, in the alternative, for a new trial and the district court's denial of Utility's motion to tax attorneys' fees against the Moffitts are also AFFIRMED. We further deny Utility's request for an award of the attorneys' fees required to defend this appeal.
 
 
 99
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Apparently the Moffitts only challenge the jury's decision on apportionment of damages between Utility and the United States. The Moffitts do not appear to argue with the jury's conclusion that Moffitt was 25% negligent nor do they quibble with the $1,224,727 in damages awarded to them
 
 
 [2]
 The Moffitts filed a separate action in state court against Hawaiian Telephone, two Hawaiian Telephone employees, and D & F Builders, the subcontractor for Hawaiian Telephone who installed Pole 5XT
 
 
 [3]
 The appeals against United States and Utility are consolidated herein
 
 
 [4]
 Pole 5XT, the site of Moffitt's fatal accident, was an empty pole (i.e., no telephone cables or live power lines) 25 feet high; its top was approximately two feet from the lowest point of an existing overhead live power line. Approximately one week before Moffitt's death, a crew leader of the United States Army's Exterior Electrical Shop (Electrical Shop) notified his supervisor of the close proximity of Pole 5XT to the overhead power line and the possibly excessive sag in the power line. No action was taken by the Electrical Shop. The crew leader and two shop leaders testified at trial there was nothing to suggest the pole's location represented a hazard to telephone linemen
 
 
 [5]
 William Mazer, the Moffitts' expert witness on electricity, testified that Moffitt would have to have been within 1/3" of the overhead power line before electricity would have arced as it did. One of Moffitt's co-workers also testified Moffitt could not have been more than 1/3" from the live power line when he was electrocuted
 
 
 [6]
 In fact, ACE Requirements permit electrical linemen performing live-line work to approach with uninsulated tools within two feet of 7,200-volt power lines. See ACE Requirements § 15.I.04, Table 15-1
 
 
 [7]
 In the DATS Agreements, Hawaiian Telephone is required to "use, protect, preserve, and maintain the Government-owned equipment and facilities in accordance with current telephone industry practice." § 1.05
 
 
 [8]
 The Second Restatement defines extrahazardous as either dangerous in the absence of special precautions, § 416, or inherently dangerous, § 427. See also Makaneole, 70 Haw. at 508, 777 P.2d at 1187
 
 
 [9]
 The Barron court interpreted Michel v. Valdastri, Ltd., 59 Haw. 53, 575 P.2d 1299 (1978), as indicating "Hawaii would follow those jurisdictions which have imposed liability on an owner for permitting his contractor to conduct extra hazardous activities without taking proper precautions"; the Barron court based its decision on this reading of Michel. Barron, 473 F.Supp. at 1082. The Ninth Circuit subsequently affirmed this portion of the Barron decision. Barron v. United States, 654 F.2d 644, 646-47 (9th Cir.1981)
 
 
 [10]
 The Moffitts note the question of whether the conditions at the site of Moffitt's work were extrahazardous was an issue addressed by the United States in its motion for summary judgment. The Honorable Harold M. Fong, United States District Judge, found the power lines presented an extreme hazard to Moffitt when he denied the United States' motion. Judge Fong's finding, however, was not essential for determining whether summary judgment was appropriate; therefore, his finding was not binding on the trial judge
 
 
 [11]
 The jurors specifically referred to the American National Standards Institute (ANSI) and OSHA as possible examples
 
 
 [12]
 Although Flood stated he only had specific knowledge of the language used on Utility's warning tags after 1977 when he became chief engineer, Flood was a design engineer at Utility from 1967-77 and had general knowledge about the warning tags used on Utility's aerial lifts
 
 
 [13]
 Fed.R.App.P. 38 provides:
 If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
 
 
 [14]
 28 U.S.C. § 1912 provides:
 Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.
 
 
 [15]
 28 U.S.C. § 1927 provides:
 Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.